Bell *vs.* Bell *et al.*

No. 46.—WILLIAM A. BELL, plaintiff in error, *vs.* AMY BELL
*et al.* defendants.

[1.] Where a trustee fraudulently sells land belonging to the *cestui que trust,*
under certain circumstances, the measure of damages will not be restricted
to the price of the property, at the time of sale; but he will be held liable
for the enhanced value when the demand is made, with interest thereon.

In Equity.   Marion.   Tried before Judge WORRILL, March
Term, 1856.

Amy Bell as the widow, and Mary A. Bell and others as
the children, of John Bell, deceased, filed their bill for dis-

covery, account, &c. against William A. Bell, alleging that said John Bell was formerly of Hall Co. and said State, and was the drawer of lot of land No. 125, in the 31st district of originally Lee, now Marion County; that afterwards, he removed to the State of Tennessee, and there died—leaving the said Amy Bell, his widow, and certain named children, the complainants, as his next of kin and heirs at law; that in 1843, one William A. Bell, then of Stewart, now of Marion County, and who was not of kin to complainants, nor a creditor of the deceased, fraudulently procured the Court of Ordinary of Stewart County to grant him letters of administration on the estate of said deceased—the said deceased having no other estate except said lot of land in the State of Georgia, and owing no debts in said State at the time of his death; and the said children being under age; and the said administration being asked for by, and granted to said William A. Bell, without their knowledge or consent; and that he procured the same to convert said lot of land to his own use; that in 1844, he fraudulently obtained an order from said Court of Ordinary, authorizing him to sell said land, upon the representation by him, that such sale would be for the benefit of the heirs and creditors, when, in truth and fact, he did not know of any heirs or creditors of said John Bell; that on the first Tuesday in January, 1845, he caused said land to be sold before the Court house door in Stewart County, and to be bid off by one Henry Josey, for $50—the pretended purchaser receiving a deed without paying the money aforesaid—it having been fraudulently agreed between the said administrator and Josey, that the latter should hold the title until the former could make sale of the land, when the profits were to be divided between them; that afterwards Bell, the administrator, sold the land to Robert Sheffield for $300; that Josey executed his deed of conveyance, and that the purchase money was divided between him and said Bell, the administrator; that complainants had all attained their majority, and had had no notice of the actings and doings of said administrator, Bell, until about the first November in

1851; that it had been intended by complainants, as soon as the youngest of them arrived at age, to dispose of said land and make division of the proceeds; and when they were proceeding so to do, then, for the first time, became informed of the facts aforesaid; that said land is worth $1000; that they have applied to said Bell to account to them for the value of said land, or to pay to them the money received from Sheffield therefor; and that defendant refused to account, except for the $50 for which the lot sold at public sale, &c.

Prayer, that defendant, Bell, may be decreed to account for the value of the land, on the 1st November, 1851, &c.

The defendant, William A. Bell, in his answer, admitted the facts, substantially, as charged, except that he denies all fraud as charged—all knowledge of the complainants, and requires proof of their being the heirs at law of John Bell, deceased; denies that he obtained administration for the purpose of converting the land; says that he made the application at the instance of Robert Hamilton, of Hall County, who represented himself as the next of kin of John Bell, and that he "claimed for having paid taxes several years on said lot;" denies that he falsely and fraudulently made the representations upon which he obtained the order to sell said land; says he represented "that said land was a wood land lot, and in the situation it then was, was productive of no annual proceeds of any value, either by rent or cultivation; and that, therefore, a sale of said lot would be for the benefit of the heirs and creditors of said estate;" did not know at the time of any heirs or creditors, except the said Robert Hamilton above stated, admits the sale took place at the time and place stated; but denies all fraud; says the land was sold openly and publicly, and no fraud was used on his part to prevent purchasers from bidding at the sale, and denies that he procured Henry Josey to purchase the land with any fraudulent intent; that he asked Josey to buy said land, but not with the view to defraud the heirs and creditors of said estate, but for the purpose of making said land bring its worth and not to let it go off at a sacrifice; that the same was

knocked off to Josey for $50; and that defendant told Josey, after he had bid it off, that he would go halves with him, would make him a deed thereto, and that when Josey sold the land, they would share the profits equally; admits that Josey did not pay the $50; that the land was sold for $300, as stated, and that it is now worth $1000; that John Sims purchased from Sheffield, and may have done so without notice of the facts stated in the bill.

The cause was tried upon the bill and answer alone. These being read to the Jury upon the trial, and after argument of Counsel, the Court charged as follows:

"If the defendant was not a creditor of John Bell, or related to him, but to benefit himself by a sale of the land, procured administration on John Bell's estate, and afterwards obtained an order to sell the land, and there was no necessity to sell it either to pay debts or to make distribution among the heirs at law of John Bell; or if the proof shows that the defendant did not procure the order to sell, either to pay debts or to make a distribution, but did it for his own advantage, to deprive complainants of their title to the land, and to procure it himself, then he is liable to pay complainants the present value of the land, and not the amount he got from Sheffield, as his Counsel has insisted.

It is admitted that defendant procured an order from the Ordinary Court of Stewart County to sell the lot of land; the Court could only grant the order upon proof that it was necessary to sell the land, either to pay the debts of John Bell or make distribution among his heirs at law. The presumption is, that the Court granted the order upon proof made by defendant, that a sale of the land was necessary to pay the debts of John Bell, or to make distribution among his heirs at law. It is further admitted, that defendant sold the land under this order. Now, then, if the proof shows that John Bell was not indebted, and that defendant knew nothing of his heirs at law when he sold the land, the defendant, in procuring the order and selling the land under it, commit-

ted a fraud upon the rights of complainants, and is bound to make good to them all damages which they may have sustained by his fraudulent interference with their property.

It is admitted that John Bell drew the lot of land; that he is dead, and that complainants are his heirs at law. When he died, his title in the land vested in these complainants, and the defendant, as administrator, by no act of his, had the right to divest complainants of their title, unless it was necessary to sell the land, or to make a distribution of the same among complainants. Now, if the defendant, by falsely representing that it was necessary to sell the land for the purpose above mentioned, or either of them, procured an order to sell from the Ordinary Court of Stewart County, and sold the land under such order, it was a fraud, and he must pay complainants what the proof shows the land was worth at the filing of this bill, together with interest on the amount from that time to the present.

What was defendant's motive in procuring an administration and selling the land? Was it a *bona fide* purpose on his part to sell it to pay the debts of John Bell? Was that his purpose? If so, then he is only liable to pay complainants the $50 he sold it for; but if you believe this was not his purpose, but on the contrary, it was his purpose to defraud complainants of their title to the land, or to procure it himself, then he is liable for the value of the land from the filing of the bill, together with interest thereon from that time to the present."

The Court gave the Jury "no instructions in relation to what Bell received for the land from Robert Sheffield, except as before stated."

The Jury found for complainants $1000, with interest from the 22d day of January, 1852, and costs.

Counsel for defendant excepts to the charge of the Court, and assigns the same as error.

BLANFORD & CRAWFORD, for plaintiff in error.

L. B. SMITH, for defendants.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] We see nothing in the charge of the Court requiring· notice or comment, except as to the measure of damages. For that this was one of those too common but highly repre- hensible proceedings to wrest property, under color of law, from its innocent but ignorant owners, there can be no doubt.

The rule as to damages, is thus stated by *Hill on Trustees* (*p.* 522): "If the property cannot be followed in specie, or if the holder, having taken without notice, cannot be made liable to the trust, the trustee will be decreed to compensate the *cestui que trust* by payment of a sum equal to the value of the trust property, or by purchasing other property of equal value for their benefit." And the author cites, in sup- port of the text, 2 *P. Wms.* 681; 1 *Ves. Jr.* 297; 5 *Ib.* 794; 9 *Ib.* 103; 2 *Madd.* 235; *and* 3 *Beavan,* 550. And in all cases, he will further be decreed to account for all rent or interest, or other profit or advantage received from the trust estate, or in any way arising from the breach of trust. (1 *Ves. Jr.* 408; 3 *Swanston,* 625; 4 *Ves.* 497; 5 *Ib.* 794; 12 *Ib.* 402; 15 *Ib.* 226; 2 *M. & R.* 655.)

At what time is the value of the property to be estimated? Or, in other words, what is the measure of damages in such cases, is a vexed question. Different Courts have adopted different rules upon this subject; and all of them admit so many exceptions to their own rule, as virtually to make it of none effect.

The case read from 2 *Johnson's Ch. R.* holds, that where the trust property has been fraudulently converted to the use of the trustee, the damages are not restricted to the time of sale; but that the *cestui que trust* are entitled to the in- creased value. In Massachusetts, the rule is to limit the damages to the time of sale. The Appellate Court of Vir- ginia was equally divided upon this point in a case in *Grat- tan;* but the decision went in accordance with the Massa- chusetts rule.

Bell *vs.* Bell *et al.*

Mr. *Parsons*, in his *Treatise on Contracts*, discusses this question, but leaves it uncertain. In the course of his remarks upon this subject, he puts a case very like the one at bar, where land belonging to a *cestui que trust*, which they would likely not sell immediately, was disposed of by the trustee. In such case, he concludes they would be entitled to the enhanced value.

Under all the circumstances of this case, we think the charge of the Court, the verdict of the Jury, and the decree founded thereon right, in holding the defendant liable for the value of the land at the time the bill was filed, 22d day of January, 1852, which was admitted to be $1000, with interest thereon from date. It is high time that this unwarrantable interference with other people's property, to subserve the most selfish purposes, should be discouraged and rebuked. It has grown to be a great evil in the State, and gives rise to a large portion of the litigation which crowds the Courts. We have nothing to say against legitimate administration, *bona fide* obtained to pay debts and distribute the estate. But to seize and appropriate property under color of law, is worse even than to take and convert it without any such pretence of authority.