## McWILLIAMS *et al.* v. LEHMAN.

Where two persons, being neither creditors nor next of kin of a decedent, with intent to benefit themselves by having a sale of the land of the decedent as that of his widow, who was their sister, and dividing the proceeds among themselves and other heirs of their sister, procured administration on the decedent's estate, one qualifying as administrator and the other being surety on his bond; and where afterwards they obtained an order to sell the land, not for the purpose of paying the debts of the decedent or making distribution among his heirs, but for the purpose of depriving the heir of the decedent of his rights in his father's estate, they were guilty of actionable fraud, and liable to the defrauded heir for all damages sustained by their fraudulent interference with his father's estate.

(*a*) The excerpts from the charge are not subject to the criticism made of them. The verdict is authorized by the evidence, and the court did not abuse his discretion in refusing a new trial.

FEBRUARY 11, 1915.

Action for damages. Before Judge Worrill. Randolph superior court. January 10, 1914.

Albert Lehman in 1849 intermarried with Kate Barnwell, who died in 1851, leaving one son, Henry. Subsequently he intermarried with Lydia McWilliams. In 1869, being a resident of the county of Randolph, he had set apart as a homestead a lot in the city of Cuthbert, known as the Lehman carriage-shop site. In November, 1871, Henry Lehman removed from the State of Georgia to the State of Texas, where he has since continuously resided. On October 14, 1878, Albert Lehman died. He left surviving his widow, two sons, Eugene and Slaton, children of the second marriage, and Henry, the son by the first marriage. The widow elected to continue her interest as a homestead beneficiary, and remained in possession of the land: Slaton and Eugene died, the one in 1892 and the other in 1910, leaving their mother and half brother as their sole heirs at law, whereby their mother became the owner of a one-third interest and Henry the owner of a two-thirds interest in the city lot. Henry attended the funeral of his brother Slaton at Cuthbert in 1892, and did not come again to this State until the year 1912. The widow of Albert Lehman died in 1910, and her brothers, T. A. and J. B. McWilliams, qualified as administrators on her estate. As such administrators they applied to the ordinary for leave to sell the Lehman shop property as the property of their intestate, and an order was duly granted authorizing them to sell. They advertised the property and brought it to sale pursuant to the advertisement, when it was bid off by one Mrs. Key for the sum of $810. Mrs. Key declined to pay the purchase-money, unless there was administration on the estate of Albert Lehman and his interest was sold. Thereupon T. A. McWilliams applied for and obtained letters of administration on the estate of Albert Lehman, and J. B. McWilliams became surety on his administrator's bond. T. A. McWilliams, as the administrator of Albert Lehman, applied for and obtained from the ordinary leave to sell the Lehman shop property as belonging to the estate of Albert Lehman. J. B. and T. A. McWilliams, as administrators of Lydia Lehman, advertised the property for sale, on the 1st Tuesday in January, 1912, as the property of Lydia Lehman; and T. A. McWilliams, as administrator of Albert Lehman, advertised the same property for sale, on the same day, as the property of Albert Leh-

man. The property was sold under both advertisements, the purchasers bidding separately on the interest of each. D. M. Jacobs became the purchaser, paying $155 for the interest of Albert Lehman and $660 for the interest of Lydia Lehman, and the administrators made him a deed to the property. The money received by T. A. and J. B. McWilliams, as administrators of Lydia Lehman, was distributed among her heirs, two of whom were the administrators, who received each a considerable share. In December, 1912, Henry Lehman came on a visit to Cuthbert, ascertained that the land belonging to the estate of his father had been disposed of, demanded of T. A. and J. B. McWilliams that they pay him two thirds of the value of the lot, and, upon their refusal, brought against them a petition alleging: that the conduct of the defendants in the sale of the property of his deceased father was fraudulent, and designed to defeat his claims in the estate; that T. A. McWilliams, in applying for administration on the estate, fraudulently represented to the ordinary that he was one of the next of kin of Albert Lehman, and in the application for leave to sell the land the administrator, in pursuance of his fraudulent scheme to divest the plaintiff of any interest in his father's estate, represented that it was necessary that the sale be had for the purpose of perfecting title to the property, and to make distribution among the heirs; that on the day of the sale the defendants, being joint administrators on Lydia Lehman's estate, and one of them being administrator on Albert Lehman's estate, in advancement of their purpose to defeat petitioner of his inheritance, employed an auctioneer to cry off the land as the accredited representative of both estates, and instructed him to simply offer the land for sale as the Lehman property, without designating whether the same was being sold as the estate of Lydia or of Albert Lehman, and, to further create the impression that the property really belonged to the estate of Lydia Lehman, they fraudulently procured an order authorizing the sale of the property as the property of Albert Lehman for the purpose of perfecting the title of Lydia, and caused their attorney to commence the bidding by offering the sum of one hundred dollars for the Albert Lehman interest and five hundred dollars for the Lydia Lehman interest, with the intention that prospective purchasers would make similar bids in the same relative proportion, which was done until the property was finally

knocked off to Jacobs, who acted in entire good faith and without notice of the true facts, being deceived and imposed upon by the fraudulent conduct of the defendants; and that Jacobs on the faith of his purchase has erected valuable improvements on the property. The plaintiff prayed judgment against the defendants for the damages sustained in the loss of his interest in his father's property, and for attorney's fees. The defendants made answer, averring: that for twenty years the plaintiff had not been heard from; that they had made diligent efforts to ascertain if he was living, and they in good faith believed him to be dead without issue, and that the two sons of Lydia Lehman took by inheritance the entire estate of their father, and, upon their death, their mother, Lydia Lehman, became their sole heir; that, acting upon this belief, they applied for administration on the estate of Lydia, believing that she was the sole owner of the property, and exposed it for sale, when it was bid off by Mrs. Key, who refused to comply with her bid, on the ground that Albert Lehman had an interest therein; that, under the advice of counsel, T. A. McWilliams applied and was appointed administrator on the estate of Albert Lehman, believing at the time that Henry Lehman was dead and that his interest in the shop lot had become vested in the estate of his father; that an order authorizing the sale of the interest of Albert Lehman in the shop lot was obtained, and the defendants as administrators of the estate of Lydia Lehman, and T. A. McWilliams as administrator of the estate of Albert Lehman, believing it to be to the interest of both estates to have the lot sold as an entirety, jointly advertised it for sale, and sold it as the property of both estates; that they did nothing to deter bidding, and the property brought its full value; that their entire conduct in the matter was in good faith, under the advice of counsel, and under the belief that Henry Lehman was dead, and with no intention to defraud him of any interest in his father's estate; and that he was only entitled to receive his share of what the interest of his father brought at that sale, after deducting the expenses of administration. The plaintiff introduced evidence tending to support his contentions. The value of the land at the time of the sale was variously estimated by the witnesses from $1,500 to $1,600. The defendants introduced no testimony. The jury returned a verdict for the plaintiff for $1,128, and for the further sum of $100 attorney's fees. The defendants

made a motion for new trial, which was overruled, and they excepted.

*J. R. Irwin, W. H. Gurr,* and *R. L. Moye,* for plaintiffs in error.
*Glessner & Park* and *James W. Harris,* contra.

EVANS, P. J. (After stating the foregoing facts.) The plaintiff's case was projected on the theory that the defendants had conspired to defraud him of an inheritance from his father, and that as a result of the fraud he had sustained damage. If the defendants, being neither creditors nor next of kin of Albert Lehman, with intent to benefit themselves by having a sale of the land as their sister's property and dividing the proceeds of the sale between themselves and other heirs of their sister, procured administration upon Albert Lehman's estate, and afterwards obtained an order to sell the land, not for the purpose of paying the debts of that estate or making distribution among his heirs, but for the purpose of depriving the plaintiff of his rights in his father's estate, the defendants would be guilty of actionable fraud, and liable to the plaintiff for all damages which he may have sustained by their fraudulent interference with his father's estate. *Bell* v. *Bell,* 20 *Ga.* 250, 253. The evidence authorized this inference. ·Neither defendant testified respecting their good faith, or attempted to rebut the plaintiff's evidence adduced to establish his case. The general charge of the court fairly submitted the issues, and the excerpts to which exception is taken are. not open to the criticisms made against them.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*