## THE KNOXVILLE IRON COMPANY *vs.* WILKINS, POST & COMPANY *et al.*

[Jackson, C. J., not presiding.]

Where a bill was exhibited under the act of 1881, for the purpose of collecting and appropriating to the use of creditors the assets and effects of a firm alleged to be insolvent traders, who had failed and refused to pay their debts at maturity on demand, and praying for an injunction and receiver, if such bill were filed in the office of the clerk of the superior court without the sanction of the judge, this did not prevent the making of an assignment by the debtors, giving preferences, made prior to the sanctioning of the bill; and as the complainants could get nothing from the preferred creditors, no case was made for an injunction and receiver; and the judge exercised his discretion properly in refusing the same.

(*a.*) The act of 1881 will be strictly construed, and persons seeking to enforce rights under it must bring themselves within its letter.

(*b.*) "Filing" of a bill, meaning of discussed.

March 30, 1885.

Injunction and Receiver. Equity. Practice in Superior Court. Laws. Insolvency. Debtor and Creditor. Before Judge HAMMOND. Fulton County. At Chambers. February 10, 1885.

The Knoxville Iron Company brought their bill for injunction and receiver against Wilkins, Post & Company *et al.*, alleging that the copartnership was a firm of insolvent traders. The bill was sworn to on January 23, 1885, and was marked filed in office on that day. The firm assigned on January 24, in the morning. The bill was not sanctioned when filed, but on January 24, Judge Hutchins, of the Western circuit, granted an order for defendants to show cause why an injunction and receiver should not be

granted. This order recited that Judge Hammond, of the Atlanta circuit, was absent from the state. On the hearing, which was had before Judge Hammond, the injunction and receiver were refused, on the ground that insolvency was not sufficiently shown, and because the filing of the bill without the sanction of the chancellor was not a legal filing, and the sanction was not obtained until after the deed of assignment was made. On the subject of the filing, the following affidavits were read:

*J. S. Holliday:* He was deputy clerk of Fulton superior court; about half-past eight o'clock on the evening of January 23, W. S. Thompson, Esq., of complainant's counsel, came to deponent's house, bringing with him the bill, and stated that Wilkins, Post & Company had promised to give complainant a second mortgage on their property, but he thought Jackson (one of defendant's counsel) was then engaged in preparing a deed of assignment for them to execute; that if no assignment was executed, he did not wish Wilkins to know that the bill had been filed, but if it were, he wished to be ahead of it in the filing of the bill, and it might go out to the world; that he would instruct deponent on the next day as to docketing it, but requested that, until such instructions were received, the bill be kept off the docket; that he wished the bill marked filed, but desired the fact kept private until he could find out in the morning whether the assignment had been made or not; deponent had no key to the court-house and had to hunt up two of the employés of the clerk's office before he could get in, and then he did not go into the office of the clerk of the superior court, but into the city court room, and there marked the paper "filed in office" at 10 o'clock at night, and placed the bill in his desk among the papers of the city court. Deponent, in the division of labor in the clerk's office, is specially entrusted with the conduct of the clerical portion of the business of the city court and with the custody of the city court papers, and among them he filed the bill. Deponent also does general

work connected with the clerk's office of the superior court. The bill was not put in the clerk's office of the superior court until between 8 and 9 o'clock on the morning of the 24th, and until that time no one in said office had any knowledge of its existence.

*W. S. Thomson:* He had read the affidavit of J. S. Holliday as to the filing of the bill; and while it is substantially correct, under a proper construction, it is liable to misconstruction; the true construction is, that he instructed Holliday, as deputy clerk, to regularly file said bill in Fulton superior court, and that this is the fact as to deponent's instructions.

Complainant excepted.

CANDLER, THOMPSON & CANDLER, for plaintiff in error.

JACKSON & KING; RICHARD H. CLARK, for defendants.

HALL, Justice.

This was a bill exhibited under the act of the general assembly of 1880 and 1881,—Code, §3149, (a), (b), (c), (d), (e) and (f)—for the purpose of collecting and appropriating to the use of the creditors the assets and effects of a firm of alleged insolvent traders, who had failed at the maturity of one or more of their debts to pay the same, and had refused so to do upon proper demand made. The bill, among other things, prayed an injunction and the appointment of a receiver. If filed at all in the office of the court to which it is returnable, it was filed on the night previous to the execution by the firm of the assignment containing preferences, which it seems to have been its purpose to set aside; but this alleged filing occurred previous to the sanction of the bill by the chancellor by which a temporary restraining order was granted and a receiver appointed temporarily. On the final hearing of this preliminary sanction, the chancellor revoked it, and refused the extraordinary relief prayed, upon this among other

grounds: that the filing of the bill, without the sanction of the chancellor ordering the extraordinary remedies sought, was not such a filing, under the law, as would, un-der the act, defeat an assignment with preferences made subsequent to the alleged filing, but before the conditional sanction ordering an injunction and appointing a receiver temporarily. If this decision is correct, it is not essential to consider the other two questions made by the record, viz., whether, under the peculiar circumstances dis-closed, the bill was legally filed in the proper office for any purpose of notice as to the pendency of the suits; and whether the insolvency of the firm of traders was so con-clusively established by the fact that it had made the assignment as to preclude further inquiry into the question.

While we are strongly inclined to the opinion that the filing of this bill under, any view of the facts disclosed by the record was not available as notice, which is ordinarily implied from \a *lis pendens*, and that the assignment is not affected thereby, yet we hold that, under the peculiar pro-visions of the act in question, taken in connection with other cognate provisions of the law, it was not the filing contemplated to prevent such preferences by insolvent persons as may be made lawfully. This act has always been subjected to a strict construction, and unless a party brings himself within its very letter, the relief it provides has been invariably denied. If the assignment was other-wise valid, the filing of the bill in the clerk's office did not, under the circumstances, render it invalid, and upon its execution and delivery, the assignors ceased to be traders; and, as the complainants could get nothing from the preferred creditors under such circumstances, there was no case made for an injunction and receiver, and the judge exercised his discretion properly in refusing either or both of them. 67 *Ga.*, 52; 69 *Id.*, 492.

That this was not the filing contemplated and required by the act, we think is evident from section 3149 (b) of the Code, which provides that the chancellor, under such pro-

ceedings as are usual in equity, may grant injunctions and appoint receivers for the collection and preservation of the assets in the cases designated thereby. What were the usual proceedings in equity referred to and made a part of this act at the time of its adoption, in relation to the filing of bills? The 53d section of the judiciary act of 1799 (Cobb's New Dig, Appendix, 1143) required in terms that all bills in equity should be read and sanctioned by one of the judges, and a copy thereof served on the opposite party at least thirty days before the filing of such bill in court. By the act of December 24, 1827, so much of the foregoing provision as required judges to read and sanction bills in equity, other than bills of injunction, *ne exeat* and *quia timet*, before filing them in court, was repealed. Cobb's New Dig., 468. So that, under this legislation, bills praying extraordinary remedies required the sanction of the judge before they could be filed in court, and such is the provision of our Code, §4184, which declares, in plain and unmistakable language, that " no bill shall require the sanction of the judge before its filing, unless it prays some extraordinary remedy." If anything further were needed to strengthen this view, it is found in the very act under which this proceeding was taken, Code, §3149 (d), which cuts off all preferences given, upon the appointment of a receiver, and after the filing of the bill, and requires a *pro rata* distribution of the insolvent's assets among his creditors, preserving liens existing at the time of the appointment of receiver and filing of the bill.

Judgment affirmed.