THE ATLANTA REAL ESTATE COMPANY *vs.* THE ATLANTA NATIONAL BANK *et al.*

1. The directors and managers of a corporation, who control and have charge of its effects, are trustees for the stockholders, and both they and others who, with the knowledge of their misappropriation, aid them in diverting its property, would be liable to the injured parties.

2. Equity was the proper forum in which to seek relief in such a case, and the bill was properly brought in the name of some of the stockholders in behalf of themselves and such of their co-corporators as are in a similar condition.

3. The bill is not multifarious nor objectionable on the ground of misjoinder of parties or causes of action.

4. There being no prayer for either an injunction or a receiver previous to the final trial, the bill was properly filed without the sanction of the judge.

(*a*.) This case does not fall within the rule laid down in *The Knoxville Iron Company vs. Wilkins, Post & Company et al.*, 74 *Ga.*, 493. February 9, 1886.

Corporations. Stock and Stockholders. Trusts and Trustees. Equity. Practice in Superior Court. Before Judge STEWART. Fulton County. At Chambers. January 17, 1885.

On March 27, 1884, the Atlanta National Bank *et al.* filed their bill against the Atlanta Real Estate Company, H. B. Plant, W. T. Walters, B. F. Newcomer, R. B. Smith, R. T. Wilson and E. W. Cole, alleging, in brief, as follows: In 1871, the Southern Railway Security Company was organized under the laws of Pennsylvania, and acquired a large amount of property, consisting of stocks, bonds, interests in railroads, etc. The complainants held stock in the company. Plant, Walters, Wilson and Newcomer were either directors or officers, or at least were of potent influence in the councils of the company, and they and Wilson held and controlled large blocks of the stock. Plant was the trustee and agent of the company, and was entrusted with the buying of lands necessary to a railroad proposed to be built by it. By agreement, he took titles thereto in his own name, but in fact it belonged to the company. In 1873, the directors began making representations that the company was embarrassed and would be crippled, and at a called meeting of the stockholders, held in New York, which the complainants did not attend, and of which they had no notice, but the defendants being largely in control of the stock present, a resolution was passed, authorizing the directors to sell to such stockholders as might elect to buy within ten days of a notice to be issued, certain of the most valuable securities belonging to it for certain prices, receiving one-half thereof in the company's own stock at par, though it was not worth that amount. There was no necessity for this, as the assets of the company were largely in excess of its liabilities to creditors. Plant, Walters, Wilson and Newcomer being thus in control, combined and confederated to possess themselves of the assets, and to leave the smaller stockholders

to pocket the loss, and they have possessed themselves of the valuable assets of the company for inconsiderable sums, and large amounts of assets have disappeared from the company's possession and have been found to be in that of these defendants.

(Certain railroad stocks, bonds and interests are described.)

" Your orators show that from and after said latter part of 1873, in the last part of November, 1873, that said Security Company did no further active business, but that said company literally dropped out of business; that its assets were disposed of in such a manner that of said large surplus not one cent ever came into the hands of orators or the holders of the stock now owned by orators; and that no notice of the selling out, or dissolution, or disbanding of said company, was ever given to them. But orators allege that so it is that said company dropped out of existence and disappeared, leaving no trace, and all of said assets melted, and the owners of the stock represented by orators were left without any evidence of the existence of said company, except their certificates of stock to remind them of their money invested in said company."

Plant, as the trustee of the company, bought certain land in the city of Atlanta and took a deed in his own name, though in fact it belonged to the company. Taking advantage of the fact that the deed was in his own name, he appropriated it to his own use, associated with himself Walters and Newcomer, who acted with full notice, and, for a very inadequate consideration, made a deed to himself and them, "trustees," his wife joining him. Other deeds (described in the bill) were taken by the " trustees " for the alleged purpose of protecting their title. In 1881, Plant, Walters and Newcomer, " trustees," claiming that they were not trustees for anybody but themselves and were tenants in common, made a deed to R. B. Smith, and he, in 1883, made a deed to the Atlanta Real Estate Company. None of these deeds contained a general warranty of title.

Smith was not a *bona fide* purchaser for value, but a mere instrument of Plant to pass title to the Atlanta Real Estate Company, and was a mere naked holder of the legal title for that purpose, and that company is a mere cover for the interest of the present holders and pretended owners of the property, and was organized in order to handle it for sale for the benefit of such pretended owners. Walters and Newcomer transferred their interest in the property to Wilson and E. W. Cole; in December, 1883, Plant, Wilson and Cole obtained a charter under the name of the Atlanta Real Estate Company, and in the same month, Smith, without any consideration, conveyed the land to that company. The company and each of its corporators took with full knowledge of all the facts and the equities of the complainants. It is proceeding to plat the ground with a view to selling it to innocent purchasers. Smith is a mere figurehead, without means and with no real interest in the property, and merely held the dry, legal title to convey as he was directed, without any consideration.

The prayers were for an accounting for the assets of the Southern Railway Security Company and its stockholders, and that a receiver be appointed to take charge of the property of the Security Company and to receive and administer it and whatever may be recovered in this suit, and that the defendants be forever enjoined from selling, renting, using or interfering with any of the property which might be decreed to be the property of the Southern Railway Security Company or its stockholders, and for subpœna and general relief.

Discovery was waived. The deeds referred to in the bill were described by reference to the books and pages of the records where they were recorded.

The Atlanta Real Estate Company demurred to the bill, on the following grounds:

(1.) That there is no equity in said bill.

(2.) That complainants have not in said bill shown any right to proceed against this defendant.

44      SUPREME COURT OF GEORGIA.

The Atlanta Real Estate Company vs. The Atlanta National Bank et al.

(3.) That complainants, in said bill of complaint, have not averred any tender back to this defendant of what it paid for said property, or shown in any way that they have done equity.

(4.) That said bill is multifarious.

(5.) That the allegations of said bill concerning the organization and operation of the Southern Security Company, so far as they relate to other property or railroads, do not in any way concern this defendant, and should be stricken from said bill.

(6.) That the allegations of said bill connecting said Security Company and the property owned by this defendant are not stated with sufficient clearness to be answered by this defendant.   They do not show that said Southern Security Company ever had any title to said property.

(7.) That no sufficient allegations are made in any way connecting one of defendant's corporators and stockholders, E. W. Cole, with said Southern Security Company, or in any way showing any wrong or fraudulent conduct on his part, or that would make defendant responsible in any way for his acts.

(8.) That the allegations in said bill concerning said W. T. Walters, R. T. Wilson, B. F. Newcombe and said H. B. Plant, so far as they relate to any other property or railroads, do not in any way concern this defendant, and should be stricken from said bill.

(9.) That the allegations concerning the transfer of the property owned by this defendant are not stated with sufficient accuracy and detail.   Said deeds in said bill referred to, or copies of them, should be annexed to said bill, or an exhibit of their vital and important descriptive parts should be set up fully, so that the same might be seen and passed upon by the court, and answers or other defences made thereto.   This is not done in said bill.

(10.) That the allegations of said bill do not describe the property complainants seek to put in controversy with ac-

curacy enough to put the public on notice, or for any decree to be made, or defence made concerning it.

(11.) That complainants have a plain, adequate and complete remedy at law.

(12.) That said bill is scandalous and impertinent.

The demurrer was overruled, and the defendant excepted. In addition to the assignment of error on this ruling, it stated, as an additional reason why the second ground should have been sustained, that the bill showed that it had not been sanctioned.

JULIUS L. BROWN, for plaintiff in error.

O. A. LOCHRANE; PAT. CALHOUN; ALEX. C. KING, for defendants.

HALL, Justice.

The complainants, who are shareholders of the stock of the "Southern Railway Security Company," exhibited their bill against certain directors and managers of the affairs of that company, and against the Atlanta Real Estate Company. They allege that the first-named defendants converted the assets of the Southern Railway Security Company to their own use, and when they had done so, ceased to conduct business in the name of that company, and suspended its functions and operations. A portion of the effects of the company thus diverted are traced through various channels and hands into the Atlanta Real Estate Company, which it is charged belongs to and is controlled by the active managers of the first-named company. The purpose of this well conceived and skilfully drawn bill is to trace these effects thus misapplied, and to restore them, with their increase, to the complainants and such other shareholders in the company as may come in and make themselves parties, and who have been injured by this wrongful conversion of the property belonging jointly to all the members of the corporation, and to hold accounta-

ble, not only the directors and managers of the corporation, but likewise all persons who, with knowledge of their misconduct, aided and assisted them in misapplying such funds.

1. That such of the defendants as controlled the corporation or had charge of its effects are trustees for the stockholders, is a proposition too well established to be denied (Code, §1688 ; Morawetz Corp., §559), and that both they and others who, with a knowledge of their misappropriation aided them in diverting its property, would be liable to the injured parties, is an equally well-settled principle. This is embodied in §3151 of our Code, to which, with the citations under it, we refer as conclusive upon the point.

2. That the bill is properly brought in the name of the complainants in behalf of themselves and such of their cocorporators as are in a similar condition, is likewise well established.   It is well settled, too, that a court of equity is the proper forum to afford the relief sought by this suit; indeed, it is the only tribunal that can adjust and settle fully the various interests of the parties and remove the impediments which have been put in the way of those who complain that they have been thus wronged.   Morawetz on Corp., §662; Manier *vs.* Hooper's Telegraph Works, L. R., 9 Ch. App. Cases, 350 ; Cramer *vs.* Bird, L. R., 6 Equity Cases, 143 · Bacon *et al. vs.* Robertson *et al.*, 18 Howard, 480.

3. The bill is not multifarious, nor is it open to objection, either because of a misjoinder of parties or causes of action.   These points are covered by the decision in the *City Bank of Macon vs. Bartlett,* 71 *Ga.,* 797.

4. There is no prayer either for the appointment of a receiver or injunction previous to the final trial, and the bill was properly filed without the sanction of the judge. The case does not fall within the rule laid down in *Knoxville Iron Works vs. Wilkins, Post & Co.,* at the last term of the court,* as was argued by the able counsel for plaintiffs in error.

*74 *Ga.,* 493.

5. What has been said disposes of the remaining grounds of the demurrer, which, as we think, was properly overruled.

Judgment affirmed.