Bissell, J.,
delivered the opinion of the court.
This writ of error was sued out to reverse a judgment sustaining a demurrer to a complaint which was filed by the plaintiffs in error against The Fishel-Schlichten Importing Company, The Fishel Importing Company, and sundry other defendants who were alleged to have been and to be the directors of the old and the new corporation, to reach assets of the Fishel-Schlichten Company, and to compel their application to the payment of the plaintiff’s debt. The complaint was attacked for insufficiency, and the ease has been argued 'here on the general question that no cause of action is stated ‘in the bill. It is quite impossible to incorporate the entire complaint of twenty pages into the opinion, and, by specific statements of its allegations or a reference thereto, show the basis on which the opinion is put. The complaint is certainly inartificial and lacks the precision, certainty, and accuracy *308 usually observed in drafting creditor’s bills to reach assets. W.hile we have concluded that enough facts are stated which, if proven, will entitle the plaintiffs to maintain their suit, we think the interests of the litigants will be better subserved in the further progress of the case by modifying and amending the bill so as to put in clear-cut and traversable form the statement of the cause of action and the narration of the facts on which it rests. We will content ourselves with a general summary of the case which the plaintiff has attempted to state, with the reasons which lead us to hold enough appears to entitle the plaintiffs to be heard and to be given an opportunity to make what proof they may respecting these transactions.
As we are advised by the arguments of counsel, the general theory on which the case was argued belo\y and the legal basis on which the plaintiff rested his rights was what is sometimes termed the “ trust fund theory ” as applied to the pursuit and application of the assets of corporations. We shall only advert generally hereafter to this principle, for, as we conceive it, the case is controlled by its facts, and the plaintiffs’ right,to recover is not at all dependent either on the adoption or rejection of this principle. In the first place, the plaintiffs do not occupy the position of general unsecured creditors or creditors holding claims not in judgment, but they are judgment creditors, who, as a rule, are entitled to file bills to reach assets which are beyond the reach of an execution. According to the complaint Goddard & Co. sold goods to The Fishel-Schlichten Importing Company in 1893, amounting to $1,496.56, which was due on the 4th of August of that year. Payment was demanded on the 21st of the month, and when refused suit was brought on the account, and on the 15th of September following judgment was entered against the company for this sum. On the 30th execution was issued, placed in the hands of the sheriff, and ultimately returned nulla bona. This is enough to give a court of equity jurisdiction. It is a jurisdiction only exercised when the remedy afforded at law is ineffectual to reach *309 the debtor’s property, or when the enforcement of the legal remedy is obstructed by some incumbrance or by a transfer which has been made to defeat the creditor’s lights. The allegation and proof of the issue of an execution and its return unsatisfied is always evidence that the legal remedy has been exhausted and dispenses with any other proof that the debtor is without property other than that which the creditor seeks to reach by his bill. Jones v. Green et al., 1 Wall. 330; Daskam v. Neff, 79 Wis. 161; Emery v. Yount, 7 Colo. 107.
Many like cases have been decided, but these are enough to illustrate and support the doctrine respecting which all the authorities agree. We therefore have parties plaintiff who show that they are entitled to file a bill to reach assets if otherwise they make out a case.
We next come to the general question whether there is enough in the complaint to entitle the plaintiffs to invoke the powers of the court to investigate the alleged transactions between The Fishel-Schlichten Importing Company and the vendees of the property, The Fishel Importing Company, and the other defendants who were directors of the' first and are directors of the last, and to whom the property of the insolvent company has come.
The bill generally charges that The Fishel-Schlichten Importing Company had been doing business in Denver for some years, and at the time of the transfer had a stock of goods amounting at its cost value and of the worth of nearly $30,000. It was charged the company had accounts on their books amounting to upwards of $12,000, some part of which was ultimately paid to these defendant directors and not applied to the liquidation of outstanding debts. These allegations would undoubtedly tend to show that in reality The Fishel-Schlichten Importing Company were not insolvent. As we view it, this does not destroy nor defeat the plaintiffs’ light to maintain their suit, providing they are able to prove the other averments, which will in like manner be summarized as we proceed. When we look at the bill to find out *310 whether it states a cause of action, we are totally unconcerned about this matter, because even though it may appear that the actual assets of the Fishel-Schlichten Company were largely in excess of its debts, yet they were insolvent in contemplation of the law, and the plaintiffs were without a legal remedy, because, according to the sheriff’s return, he was unable to find anything on which.he could levy. The plan adopted by the Fishel-Schlichten Company and the defendant directors to divert the assets of the company, and to prevent their application to outstanding1 debts, will now be stated according to the general averments of the complaint. Some little time prior to the recovery of the judgment The Fishel-Schliehten Company made two mortgages, one to Jonas Fishel, to secure an alleged debt represented by four notes aggregating the sum of $6,000, and one to Morris Wise, one of the defendant directors, to secure him for an indorsement of three notes aggregating $7,500, which had been made by The Fishel-Schlichten Company to its own order and delivered to the National Bank of Commerce. The mortgage to Wise was given on the 18th of July, 1893, but the date of the Jonas Fishel mortgage is not given. It is charged that the mortgages were unrecorded until about the time of the sale. So far as concerns the Wise mortgage, it is charged, and the notice of the sale thereunder recites, that the company had defaulted only in the payment of $3,000, being the amount of two of the notes which he had indorsed, and respecting the other there is no statement as to the maturity of any liability on the part of Wise, or that the sale was made for the purpose of liquidating the debt of $4,500. We do not regard these matters of very great importance, because the plaintiffs would seem to admit that the debts secured by the mortgages, were bona fide as to the major portion of them, although they charge that about $2,000 had been paid thereon out of collections made by The Fishel-Schlichten Company prior to the sale, and that in reality the debt due to these two mortgagees was about $11,000. The bill then proceeds to charge that on September 6,1893, the goods which were *311 in the store at the time the chattel mortgages were given, as well as a very considerable stock which had been elsewhere stored, and was alleged not to have been covered by the securities, was brought into the premises occupied by The Fishel-Schlichten Company, included in the sale, and all the stock and goods of the company sold to satisfy these secured debts. The bill then avers that the sale wiis made under the notice and bought by one Davis, at a nominal consideration of §2,000 over and above the amount of those incumbrances. It is stated Davis was not a bona fide purchaser, but acted as a friend of these directors and of the Fishel-Schlichten Company, and paid no sum whatever, cash or otherwise, as a consideration for the transfer. In some way which the bill leaves unexplained, perhaps for want of information on the part of the plaintiffs and the pleader, the mortgages were satisfied and Davis, who thus became the nominal purchaser of the assets of the Fishel-Schlichten Company, proceeded to transfer the stock to the other company, which is made a defendant, to wit, The Fisbel Importing Company. This last named company is charged to have been organized by the defendant directors, who were the directors of the old. corporation. It is averred that these directors confederated and conspired together and with Davis to carry out this plan, and scheme to have an apparently bona, fide sale made under the mortgages and a purchase concluded by. Davis, who-should convey to a new company to be organized by these-directors, who would thereby, as the real parties in interest, in the new corporation, receive any and all benefits.and ad-vantages which might be derived from the purchase and ownership of all the assets of the insolvent company, and be. compelled to pay onty the debts represented by the securi-ties. It is charged generally that thereby these defendant, directors and the new company became possessed of all the. assets of the insolvent corporation, which they appropriated, to their own use and benefit to the exclusion of creditors.This general statement will make it apparent that if the; plaintiffs are able to maintain what they allege respecting/ *312 these matters as judgment creditors of The Fishel-Schlichten Importing Company, they are entitled to pursue the assets of that company in the hands of these defendants, who are not innocent purchasers for value, and who could not by these means acquire a title good against the judgment creditors. We are well satisfied that even though the mortgages were regarded as valid as to their entirety and enforcible against the goods and that the proceedings for the foreclosure were regular and those debts paid, yet these defendant directors and The Fishel Importing Company could not acquire title to the assets of The Fishel-Schlichten Importing Company, unless they were all absorbed in the payment of those mortgages and it should appear the goods were only sufficient to liquidate those two mortgage debts. In other words, if the plaintiffs are able to prove that The Fishel Importing Company and these defendant directors acquired property largely in excess of what was requisite to liquidate the mortgages, and the sale was made for the purpose of bringing about this result and securing to the new company and the directors large gains and advantage, and they thereby became possessed of what in reality were assets of the Fishel-Schlichten Company which ought to have been devoted to the payment of debts, they may pursue this property in the hands of this company and in the possession of these directors and compel them to respond for whatever they may be able to prove was their actual gain and advantage. It does not alter the fraudulent character of the arrangement that the end was accomplished through the agency of valid mortgages regularly enforced. It is not ordinarily true that valid judgments or securities can be used as a means to accomplish fraudulent results, and wherever this is done and proof adequate to establish it is produced, courts of equity will be astute to go behind the apparent regularity of such proceedings and lay hands on the assets which have been fraudulently appropriated by persons who are properly chargeable with liability and compel their application to the liquidation of the debts which the apparently insolvent corporation has endeavored *313 by these means to place beyond the reach of creditors. This rule has been recognized in other cases and it commends itself to our judgment. Decker v. Decker, 108 N. Y. 128; Sweet v. Converse et al., 88 Mich. 1; Pullman et al. v. Ellis et al., 22 Southeastern, 569; Pickrett v. Pipkin, 64 Ala. 520; Sweeny v. Sugar Refining Co., 30 W. Va. 443; Atlanta Real Estate Co. v. Atlanta Nat. Bank, 75 Ga. 40; Atlas Nat. Bank of Chicago v. More, 152 Ill. 528.
We have attempted in this discussion to indicate the general lines on which we hold that the complaint states a cause of action, which, if maintained by proof, will warrant a judgment. We have entirely disregarded the theory of a trust, which has been very elaborately argued by counsel, because we regard it as substantially outside the necessary lines on which this case must be decided. According to the allegations of the bill, the Fishel-Schliehten Company were insolvent, because they were without assets which could be reached by process issued on the judgment. Without discussing the general question, we are quite free to admit that wherever equity obtains jurisdiction of an insolvent corporation, or of parties who have obtained what are alleged to have constituted its assets and misappropriated them, proceeding along the lines alwaj^s pursued by these courts, it will administer the assets so far as it is able to seize them, and will do what has always been conceded to be its right and its authority, compel the application of the assets of the insolvent company to the payment of its debts, and will permit no advantage to be gained either by stockholders or by parties who are not innocent purchasers. To this extent the assets of corporations were always conceded to be impressed with a trust in favor of creditors as against stockholders, or as against the company itself. Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371.
We need go no farther than this, and probably no case can be found which would conflict with this decision in that respect.
As we said at the outset, the bill is not aptly drawn, and *314 what would formerly have been called its stating part is not put in form which render its averments easily traversable, and while we conclude it states a cause of action which the plaintiffs are entitled to attempt to prove, yet we are of the opinion the plaintiffs should be required to put the issues tendered in such form as that neithér the trial court nor any other will be embarrassed by the difficulty which we have experienced in extracting the real substance of the bill.
The judgment sustaining the demurrer is accordingly reversed, and returned for further proceedings in conformity with this opinion.

Reversed.