DARLING v. POTTS *et al., Appellants.*

Division Two, December 7, 1893.

1. **Contract:** PARTNERSHIP: AGENT AND TRUSTEE: ACCOUNTING. Plaintiff as an investor placed moneys in the hands of defendant, whom he had known before and in whom he reposed confidence, to purchase lands in defendant's name. Defendant received the money

with the understanding that he should execute his own notes for deferred payments. No specific agreement was made at first as to defendant's compensation, but it was afterwards agreed that he should have half the profits, no provision being made for losses. *Held*, that the parties to the agreement were not partners, but that defendant was agent and trustee for plaintiff, and as such had no interest in any of the property bought by him, except the right to charge it with one-half of the profits of the investment, and with the money expended by him from his own funds in defraying the costs incident to the proper management of the property and such as was advanced by him in the payment of the purchase price.

2. ———: TRUSTEE: ACCOUNTING: INTEREST. In an accounting between the plaintiff and defendant as to the moneys advanced by the former to the latter, the defendant cannot object to being charged with interest on the sums advanced when he is credited with interest at the same rate on all sums paid out by him on the property bought and for its preservation.

3. ———: ———: CONVERSION: DAMAGES. The trustee was rightly charged with the market value of the stock converted by him, at the date of the conversion, with interest from such time.

4. **Practice**: REFEREE: SUPPLEMENTAL REPORT. The objection to a referee's report that it does not particularize items of credit denied to one of the parties, may be obviated by a supplemental report.

5. **Trustee**: PURCHASE OF TRUST PROPERTY. A trustee managing trust property cannot, without the knowledge and consent of the *cestui que trust,* become its purchaser directly or indirectly; if he does so, he will hold the property in trust for the *cestui que trust,* and it is immaterial that the sale was in every respect a fair one.

6. ———: ———: NOTICE. Property so wrongfully purchased by the trustee may be followed into the hands of anyone who takes it with notice of its trust character.

7. **Evidence**: TRUST. Evidence to establish a trust must be clear, cogent, and unequivocal.

8. **Practice**: REFEREE'S REPORT. The report of a referee is regarded as in the nature of the verdict of a jury, and where there is any evidence to support it, it will be presumed that such evidence was properly weighed, and the requisite effect given to it.

*Appeal from Jackson Circuit Court.*—HON. JAMES GIB-
SON, Judge.

AFFIRMED.

*R. O. Boggess, S. B. Ladd* and *Milton Moore* for appellants.

(1) The referee and the court erred in charging Mr. Potts interest on properties to September 8. Potts had paid out large sums on the properties and in their preservation. The item represents a return of some portion of his advances. He was not chargeable with interest thereon. *Williams' Adm'r, v. Heirs of Petti- grew,* 62 Mo. 460; 11 Central Law Journal, pp. 285, 306, 324; *In Matter of Estate of Campbell,* 6 Mo. App. 563. (2) The finding of the referee was erroneous on the various items found against defendant in the report. (3) The finding is erroneous as to the one hundred and eighteen shares of stock in the Metropolitan Mortgage and Improvement Company. *Re Esop,* 7 C. & P., 456; *Bram v. Bullard,* 1 Curtis; *Sweeney v. Sweet,* 14 R. I., 177. (4) Darling not only was unwilling to aid in pro- tecting said property from sale, but did not offer to redeem. 1 Pomeroy's Equity Jurisprudence, secs. 103, 390, 422; *Foster v. Wright,* 123 Mass. 100; *Railroad v. Mayor,* 1 Hilton, 562; *Cassaday v. Cavener,* 37 Iowa, 300; *Southworth v. Hopkins Heirs,* 11 Mo. 339; *Corby v. Bean,* 44 Mo. 379; *Oliver v. Palmer,* 11 G. & J., 446; *Fanning v. Dunham,* 6 Johnson, Chancery Reports, 122; *Campbell v. Morrison,* 7 Paige, 158; *Judd v. Seaver,* 8 Paige, 148. (5) The referee did not decide in terms that the Baker tract was bought with the proceeds of the pledge of the 150 shares Western Highlands stock released from lien July 1. He says, in substance, that there was much evidence tending to so prove. This is not enough to justify his findings in relation to this property. *Johnson v. Quarles,* 46 Mo. 423; *Ringo v. Richardson,* 53 Mo. 385; *Kennedy v. Kennedy,* 57 Mo. 73; *Allen v. Logan,* 96 Mo. 592. (6) If defend- ant is to be charged as trustee, in purchasing said

Baker tract certificate, and his own note, the trust must be of that character called resulting trusts; and to charge him he must have so purchased with trust funds. The evidence requisite to establish such a trust must be clear and unequivocal, not merely preponderating. There should be no reasonable doubt of the facts relied upon. *Johnson v. Quarles*, 46 Mo. 423; *Ringo v. Richardson*, 53 Mo. 385; *Kennedy v. Kennedy*, 57 Mo. 73; *Allen v. Logan*, 96 Mo. 592. (7) The finding of Karnes as arbitrator having been adopted by the parties they formed a new contract relation between the parties and should have been upheld by the referee and the court. *Hamlin v. Duke*, 28 Mo. 166; *Ellison v. Weathers*, 78 Mo. 115; *Phillips v. Couch*, 66 Mo. 219; *Carter v. Scaggs*, 38 Mo. 302; *Hays v. Hays*, 23 Wend. 363; *Pearce v. McIntyre*, 29 Mo. 423.

*Peak & Ball* for respondent.

(1) The referee did not err in not being controlled by the finding of Mr. Karnes as arbitrator. He did not investigate the accounts of defendant or give any consideration to the statements rendered as to what defendant had done with plaintiff's money. Besides, the conduct on the part of Potts which necessitated the bringing of this suit, occurred long after Mr. Karnes' findings were made and published. (2) Defendant having elected and agreed to treat the one hundred and fifty shares of stock pledged with the trust company as belonging to the Darling one-tenth he is estopped to deny it. He cannot at will, and to suit the necessities of his contention, claim that first one and then another batch of stock belongs to Darling. (3) The referee rightly made its finding in plaintiff's favor on the item of the Baker property. (4) A trustee cannot, without the knowledge and consent of the *cestui que trust*,

directly or indirectly, become the purchaser of trust property. 2 Pomeroy's Equity Jurisprudence, secs. 958,1052; 2 Perry on Trusts [2 Ed.], secs. 828, 835 and 836; *Tappan v. Duke*, 1 De G., J. & S. 517; *Hugenun v. Bosely*, 14 Ves. 273; *Stevens v. Board*, 79 N. Y. 183; *May v. LeClaire*, 11 Wall. 217. (5) The findings of the referee, if anything, are more favorable to the appellant than they ought to be; but of this he cannot complain.

BURGESS, J.—The controversy arose over the disagreement of the parties as to their rights and interest in and growing out of five different pieces of of property. *First.* Two hundred, sixty-seven and one-half acres of land in Clay county, Missouri, known as the Randolph tract, subject to a large incumbrance. *Second.* A one-tenth interest in thirty-six acres of land near the southwestern part of Kansas City, known as the Baker tract, subject to certain incumbrances. The owners of the land afterwards formed a corporation, known as Metropolitan Mortgage and Improvement Company, and conveyed the title to the same thereto; and stock representing the one-tenth was issued to F. E. Potts, who had bought the interest. The amount of the stock so issued was one hundred and eighteen shares of the par value of $100. *Third.* A claim for a one-fifth interest in a tract of land in Wyandotte county, Kansas known as Western Highlands, subject to incumbrances. This tract was conveyed to a corporation about March 7, 1887, known as Western Highlands Land Company, and stock to the amount of six hundred shares, of the par value of $100, was issued, which was subject to incumbrances. *Fourth.* Certain lots of land and interests in land situated near the corner of Tenth street and Highland avenue, in Kansas City, being lots 16, 17 and 18, and an undivided

one-fourth interest in lots 1, 2 and 3, in block 4, Wornall's addition to Kansas City, Missouri, known as the Tenth street property, subject to deeds of trust. *Fifth.* A block of stock in a corporation organized for the purpose of mining for coal and the manufacture of gas in Clay county, known as Randolph Coal and Gas Company. There were ten shares of stock of the par value of $100.

The petition states in substance, that in the latter part of 1886 or the early part of 1887, the plaintiff and defendant M. A. Potts entered into an agreement for speculating in lands about Kansas City, upon these terms, to-wit: that plaintiff should furnish money for the cash payments on purchases made under the agreement; that Potts should take title in his own name; give notes for the deferred payments; take care of such notes in case they matured before the property was disposed of, and provide means for protecting the property; that upon sales of such property plaintiff should be repaid the amounts advanced by him with interest at eight per cent; that after each had received in return the amounts advanced with interest at eight per cent., the balance of the proceeds should be equally divided between them; that $33,100 were so advanced by Darling to Potts for these purposes.

The petition also alleges that Darling was lead to believe that he was interested in a one-fifth interest of the Western Highlands under the agreement; that about $14,000 was paid therefor and that plaintiff advanced about $9,000 of that amount; that the Western Highlands was incorporated; that five hundred and ninety shares of the capital stock was issued as the share of the joint interest; and that said M. A. Potts "corruptly" caused this stock to be issued to himself, and that $14,000 of this stock was afterwards transferred to the plaintiff.

The petition also states that $3,754 of the Darling fund was paid on the purchase of the Baker tract; that this interest was represented by a declaration of trust which was issued to Potts; that this declaration was subject to a certain indebtedness and assessments; that afterwards, to meet such indebtedness and assessments, said declaration was pledged for the sum of $2,970; that afterwards said Potts caused said declaration to be sold by the pledgees and it was bought through one Morgan by said M. A. Potts in the name of F. E. Potts; that the same was paid for with proceeds of sale of certain stock of Western Highlands Land Company, "righteously" the property of Darling; and that said Baker tract having been conveyed to the Metropolitan Mortgage and Improvement Company, said Potts caused one hundred and seventeen shares of the stock representing said interest to be issued in the name of F. E. Potts and one share to defendant M. A. Potts.

The petition further alleges that certain amounts of Darling's money were paid on the remaining tracts, which had been conveyed to defendants Talbott and Wright, trustees. The petition then prays an accounting and other relief.

The answer of M. A. Potts is: *First*, a general denial, in which all the allegations in the petition contained are denied, excepting that which in the answer is afterwards specifically admitted; *second*, the answer admits that in the latter part of 1886, or the early part of 1887, the defendant, M. A. Potts, and the plaintiff entered into an agreement for speculating in lands in and near Kansas City, but alleges that such investments were to be made on these terms, namely: That Darling should furnish the money therefor; that Potts should take title to all purchases in his own name, give notes for the deferred payments, but that the deferred

payments should be taken care of by Darling; that for his services in the premises—that is, taking title to the purchases, executing notes for the deferred payments and giving his attention to the properties—he was to have one-half of the net proceeds; alleges that Darling was interested in but one-tenth of the Western Highlands; alleges that Darling failed to take care of the notes given for deferred payments, and that he was compelled to raise money and carry the properties; that about March, 1888, including these transactions, all matters of difference between him and Darling were submitted to J. V. C. Karnes, as arbitrator, who, in due season, made his award, which is set out in the answer and to which reference is made; that said award provided all moneys advanced by Potts, with eight per cent. interest, should be repaid out of the proceeds of the sale of the property before mentioned, then the advancements made by Darling should be repaid him, with like interest, and the balance equally divided between the parties, and that all the properties bought under the agreement before mentioned should be conveyed to Messrs. Talbott and Wright, as trustees, for sale as directed by the award; that said award was ratified and adopted by the parties thereto, and pursuant thereto Potts conveyed all of said properties to said trustees.

The answer contains an itemized statement of all moneys invested and advanced, and the property in which same were invested. The answer alleges that Potts had raised and employed a large amount of money in the preservation of the property after the Darling fund had been exhausted. It prays that the properties be sold and the funds divided according to the awards of Karnes.

Answer of F. E. Potts admits buying the Baker tract declarations, and denies all other allegations.

The trial court made an order of record appointing J. McD. Trimble referee to hear and determine the matters at issue in the cause, with directions that he report all proceedings had by him as such referee, together with his findings therein. The referee, after hearing the case, made report of his proceedings and findings, which, leaving off the formal parts, is as follows:

"The evidence shows that the plaintiff came to Kansas City in the latter part of 1886, or the early part of 1887, a stranger, possessed of about $40,000 in cash which he was willing to invest in real estate speculations in the hope of reaping the enormous profits that such speculations at that time promised in this locality. That he had previously formed a favorable acquaintance with the defendant, M. A. Potts, with whose family his wife had been for years before upon terms of intimate friendship. That the plaintiff was induced to believe that the defendant, M. A. Potts, by reason of his having resided in Kansas City for a number of years, as well as by reason of his undoubted intelligence, was well qualified to select for purchase such tracts of land as would yield the quickest and largest profits. That plaintiff had implicit confidence in the integrity of the defendant, M. A. Potts. That the plaintiff placed in the hand of the defendant large sums of money to be expended by him in the purchase of lands in Kansas City or vicinity for the plaintiff. The defendant, M. A. Potts, received the said money for that purpose, with the understanding between them, that it was to be used in making such cash payments as might be necessary to make on the lands which he might buy, and that he, Potts, would give his notes for any deferred payments that might have to be provided for.

"That the plaintiff promised to compensate the said defendant for his services. At first no definite

·compensation was agreed upon, but soon afterward and before much had been done under their arrangement, an understanding grew up between them and was ·acquiesced in and became an agreement between them that the said defendant Potts was to receive, as compensation for his skill, responsibility and service, one-half of the profits that should arise from the investments he might make of the plaintiff's money. That the plaintiff and said defendant were so confident that the venture would be profitable, that nothing was said between them as to who should bear the losses. In fact, it appears from the evidence that a loss was not regarded as being within the range of possibility, and hence was not for a moment considered by either party. It was confidently expected that any land that might be bought would be sold again at a profit long before any ·deferred payment could mature, and that the vendee would assume and take care of the deferred payments, leaving nothing for these parties to do, except to receive ·and enjoy the profits.

·"That the defendant, M. A. Potts, during the months of January, February and April, 1887, bought ·with the plaintiff's money the following lands and property, taking the title in his own name by agreement: *First*. The land which is known in the evidence and designated in the accounts as the 'Randolph property,' being 267.5 acres of land, situate in the county of Clay, and state of Missouri, and particularly described in the petition; *second*, the lands known in the evidence and accounts as the 'Tenth street property,' being lots 16, 17 and 18; and an undivided one-fourth interest in lots 1, 2 and 3, in block 4, of Wornall's addition to Kansas City, Missouri; *third*, an interest in the land designated in the evidence and the accounts as the 'Baker tract,' the owners of which afterward incorporated under the name of Metropoli-

tan Mortgage and Improvement Company; the interest bought in this tract is now evidenced by certificates. of one hundred and eighteen shares of the stock of said company; *fourth*, an interest in the lands known and designated in the evidence and accounts as the 'Western Highlands,' being a tract of land situate in Wyandotte county, Kansas, the owners of which afterward caused themselves to be incorporated, and the interest bought in that land is now represented by two hundred and ninety-five shares of the capital stock of the said corporation; which stock is known in the evidence as the 'Western Highlands stock;' and, *fifth*, ten shares of the capital stock of the Randolph Coal Company.

"The hopes of profit which the parties indulged in were not fulfilled. The purchases, taken as a whole, were followed by losses, instead of profit. The contingency of the profits which the parties had provided for in their agreement did not happen, whilst the contingency of loss which they did not provide for did happen. The properties could not be sold for a profit. They could not be sold at all, at a price that the parties were willing to take, before the deferred payments. became due, and remain yet unsold.

"That the plaintiff and the defendant, M. A. Potts, then were unable to come to an agreement as to the disposition that had been made of the money placed in Potts' hands by the plaintiff, and as to their relation to each other and their respective interests in the said properties. That, failing to agree as to these matters, they, by written agreement, copied in the answer of defendant, M. A. Potts, submitted them to Mr. J. V. C. Karnes, as an arbitrator, for his award. Mr. Karnes brought the parties before him and heard. evidence, and made findings on some of the matters. submitted to him. But it stands admitted upon the

trial before me that the findings of Mr. Karnes were, and are, not binding as an award. The findings of Mr. Karnes are copied in full in the said answer of defendant, M. A. Potts. And it is now urged that by reason of the alleged acquiescence of the parties in said findings, the plaintiff is now estopped to dispute their correctness, or to assert any rights or claims at variance therewith, but I am unable, from the evidence, to see wherein the defendant, M. A. Potts, is put in any worse position by reason of the plaintiff's alleged acquiescence in said findings than he was or would have been if the plaintiff had repudiated them. It is true that Potts conveyed all the title he had in the real estate in controversy to the defendants, Wright and Talbott, because the findings of Mr. Karnes directed that course, and the plaintiff assented thereto, but the only title Potts had to the lands was the naked legal title as trustee for the plaintiff, and there is no pretense that the defendants, Wright and Talbott, were not equally as suitable to manage properly this trust estate as Mr. Potts. In my opinion they were more so, by reason of the fact that they did not have any personal interest or personal feeling against the *cestui que trust*, which Potts did have and which, to say the least, would have caused every step he might have taken with reference to the property to be viewed with distrust and suspicion. I do not think that the findings of Mr. Karnes, together with the conduct of the parties in regard thereto as shown by the evidence, constitute an estoppel in its true and technical sense. But I do think that those findings and the subsequent conduct of the parties with reference thereto are proper to be considered, with the other evidence in the case, in arriving at a proper determination as to what was the true relation of these parties to each other, and what were and are their respective rights and interests

in the properties in question, and I have so considered and treated them in reaching my findings hereinafter stated.

"Much contention was had between the parties on the trial before me as to the legal effect of the purchase made by M. A. Potts nominally for his brother Fred E. Potts, through the intervention of one W. W. Morgan, of the plaintiff's interest in the Baker tract, under what may be denominated here a foreclosure sale, though not strictly such. The question was, who bought at this sale, the defendant Fred E. Potts, or was it the defendant M. A. Potts. I summarily decided that question during the progress of the trial and stated to the parties that I should consider the question as if M. A. Potts had bought for himself and taken title to himself. That this decision was correct, I have no doubt. But the more serious question now is, could M. A. Potts buy, as he did buy, and hold title against plaintiff. There is much evidence tending to show that he raised the money with which he bought by pledging the trust property, and the indirect methods he used in making the purchase open wide the eye of suspicion. If Potts had borne the relation of partner in these speculations, or had been a joint owner simply of these properties, I am not prepared to say that I might not have found that the weight of evidence failed to show that the funds which were used in making this purchase were raised by pledging the plaintiff's property. But it is quite clear to my mind that no partnership relations existed between them, and that they held no joint interest whatever in any of the properties involved in this suit. It is true that each of them had an interest in all of the properties, but their interests were not joint. Each had a qualified interest, that is to say, Potts was the trustee and as such held the legal title to all the property, both the lands and

the stocks, subject, however, to the right on the part of Potts to look to them for the repayment of such moneys as he may have advanced on account of them from his own funds. Potts being a trustee changes the burden of the proof. When any transaction involving the conduct of a trustee is called in question, the law wisely places the burden of proof upon the trustee to show that his conduct was open, fair and free from ground of suspicion.

"I think the trustee in this case, as to the purchase of the declaration of trust in the Baker tract, has failed to sustain the burden of proof in that regard. His conduct has justly aroused suspicion and his proof has failed to allay it. I think that this pretended purchase through Morgan for his brother has no effect as a purchase; I think it should be considered simply as a payment by him of the debts for which the property was attempted to be sold, and that he should be deemed to yet hold the property in trust for the plaintiff and that he should simply be allowed credit for the money he paid as so much advanced by him to protect the trust property from sale.

"The interest which the defendant M. A. Potts thus attempted to buy at said foreclosure sale is now represented by the one hundred and eighteen shares of the stock of the Metropolitan Mortgage and Improvement Company, which were afterwards issued to M. A. Potts and which, if my finding be correct, belong to the plaintiff. Since these one hundred and eighteen shares of stock were issued to M. A. Potts he has assigned to his brother, Fred E. Potts, seventy-seven shares to W. J. Anderson, for the defendant National Bank of Kansas City, forty shares, and still retains but one share himself. The defendant Fred. E. Potts is fairly chargeable with notice of the character of the title which the defendant M. A. Potts had to the

shares of stock at the time he assigned them, and, consequently, Fred. E. Potts holds them subject to the rights of the plaintiff just as if the defendant M. A. Potts still held them.

"The forty shares which were pledged to W. J. Anderson were assigned as collateral security for a note which the defendant M. A. Potts had previously given to the National Bank of Kansas City. If these shares had been assigned as collateral security at the time the note was made and the credit given to Potts then the bank would have been an innocent holder for value; but the note had been made sometime before and the credit already given before the stock was deposited as collateral security. There is no evidence tending to show that either Anderson or the bank knew how Potts held the stock; but the undisputed evidence is that the bank gave no valuable thing for the stock— hence this assignment as collateral was voluntary; whilst it is binding as against Potts, it is of no force against Darling.

"Grave dispute was had upon the trial as to whether M. A. Potts had bought with the plaintiff's money merely an undivided one-tenth interest in the Western Highlands tract, or whether he had purchased for plaintiff a greater interest than that. Whilst I at first had some doubts upon this question, I am now clearly of the opinion that the evidence upon which it is safest to rely proves that the interest bought for Darling and with his money was a tenth merely, and no more. The tenth interest is now represented by two hundred and ninety-five shares of the capital stock of the Western Highlands Company. The stock, as shown by the evidence, was worth $104.10 per share. Of these two hundred and ninety-five shares the plaintiff has received one hundred and forty shares and the defendant has appropriated and converted one hundred and

fifty-five shares thereof to his own use, and I have charged him in the account hereinafter stated with the value of the stock appropriated with eight per cent. interest thereon from the time of the conversion. I have chosen the rate eight per cent., because the findings of Mr. Karnes suggest that rate. And I have allowed interest at the same rate on all of his credits.

"I have stated, and do now state, the account between the plaintiff and the defendant, M. A. Potts, as follows:

Moneys and property received by Potts with which he should be charged.

| | | |
|---|---:|---:|
| To cash received of Darling | $33,100 | 00 |
| To cash received of properties as rent, etc. | 8,625 | 00 |
| To 8 per cent. interest on receipts properties to Sept. 8, 1890... | 1,795 | 86 |
| To value of five shares Western Highlands stock converted March, 1888 | 520 | 50 |
| To interest on same to Sept. 8, 1890 | 104 | 09 |
| To value 150 shares Western Highlands stock converted July 1, 1889 | 15,615 | 00 |
| To interest on the same to Sept. 8, 1890 | 1,492 | 12 |
| | $61,252 | 57 |

Moneys paid out by Potts for which he should have credit.

| | | |
|---|---:|---:|
| Paid on Randolph | $31,398 | 96 |
| Interest on part paid by Potts | 2,884 | 22 |
| Paid on Tenth Street | 4,802 | 33 |
| Interest paid on part paid by Potts | 310 | 20 |
| Paid on Baker tract | 4,237 | 83 |
| Paid note Savings Bank same | 2,907 | 01 |
| Paid assessments, same | 884 | 12 |
| Interest on part paid by Potts | 434 | 47 |
| Paid for Western Highlands, one-tenth | 6,000 | 00 |
| Paid by Potts, March 12, 1888, same | 1,722 | 33 |
| Interest on Potts' payment | 343 | 30 |
| Paid personal account | 2,933 | 21 |
| Total | $58,857 | 98 |
| Balance due Darling | 2,394 | 59 |

"From the evidence taken as a whole, I find:

"*First.* That there were no partnership relations created or existing between the plaintiff and M. A.

Potts, but that the said Potts was in this entire trans-action the agent and trustee of the plaintiff, and as such agent and trustee was invested with large discretionary powers, and consequently charged with those corresponding duties and obligations which the law in its wisdom imposes on him in that delicate and sacred relation.

"*Second.* I find that the defendant, M. A. Potts, had, and has, no interest in any of the property bought by him as the agent and trustee of the plaintiff, except the right to charge the property with one-half of the net profits of the venture and with the moneys that he may have expended from his own funds in defraying the costs incident upon the proper management of the property and such as he may advance towards paying the purchase price thereof. It is quite evident that there have been and will be no profits to divide, hence these properties will not be chargeable with anything on account of profits in Potts' favor. I also find that M. A. Potts has converted to his own use property belonging to the plaintiff which, together with the amount he has secured from the rents, etc., have more than reimbursed him for all moneys that he has paid out of his own pocket on account of the properties.

"I find, therefore, that all the properties that are now left where they can be reached, to-wit, the one-hundred and eighteen shares of the Metropolitan Mortgage and Improvement Company's stock, and the ten shares of the Randolph Coal and Gas Company's stock; the 265.5 acres of land in Clay county and an undivided one-fourth interest in lots 1, 2 and 3 of block 4 in Wornall's addition to Kansas City, Missouri, as between plaintiff and M. A. Potts, belong exclusively to the plaintiff, free from any liens or charges in favor of said Potts.

"*Third.* I find that M. A. Potts has converted to

his own use one hundred and fifty-five shares of the Western Highlands stock which belong to the plaintiff, and I have charged him with the same, which will have the effect to vest the title of all the Western Highland stock, except the one hundred and forty shares received by plaintiff, in the said Potts.

"*Fourth.*   I   find   that   the   one   hundred   and eighteen shares of stock in the Metropolitan Mortgage & Investment Company belong to the plaintiff, and that the present holders thereof are not innocent holders for value.

"*Fifth.*   I find that there is due from the defendant, M. A. Potts, this eighth day of September, 1890, on account stated, the sum of $2,394.59.

"*Sixth.*   I find that all the notes which M. A. Potts executed for the deferred payments of any of these properties as between plaintiff and Potts are the plaintiff's notes, and debts thereby evidenced are the plaintiff's debts.   Of course, as between the holders of these notes and Potts, Potts is liable, but as between the plaintiff and Potts, the matter stands as if plaintiff had signed the notes as principal and Potts had signed them as security.   It follows that Potts can have no claim against the plaintiff on account of said notes, until he, Potts, shall have paid them off.

"*Seventh.*   I find that both the plaintiff and the defendant, M. A. Potts, are insolvent, and that there is no immediate prospect of either of them being able to pay off any of the said notes.   All of said notes, however, except about $1,600, are secured by junior liens on the Clay county lands.   It is hoped, but it is, by no means certain, that the Clay county land will be able to satisfy the notes which are made liens on it.

"*Eighth.*   I find that the temporary injunction heretofore granted in this cause was properly granted, but, as it has fully served its purpose, it should now be

dissolved without prejudice to the plaintiff and his bondsmen.

"I suggest and recommend that the decree rendered by the court should, in proper terms, direct the defendants, Wright and Talbott, to forthwith convey and assign the following properties, now in their hands, to the plaintiff, Adam Darling, to-wit: *First.* The 267.5 acres of land in Clay county, Missouri, specifically described in the petition, subject to the liens thereon, and that Darling, in accepting the conveyance, should be deemed to have assumed the payments of all the notes given by Potts, which are secured by liens thereon. *Second.* The declaration of trust representing an undivided one-fourth interest in lots one (1), two (2), and three (3), in block (4), of Wornall's addition to Kansas City, Missouri. *Third.* The ten shares of stock in the Randolph Coal & Gas Company, subject to the indebtedness for which it is now held in pledge.

"That the certificates for seventy-seven shares of stock in the Metropolitan Mortgage and Improvement Company, now held by defendant Fred E. Potts and the certificates for forty shares of same stock held by W. J. Anderson for defendant National Bank of Kansas City, and the certificates for one share of same stock held by the defendant, M. A. Potts, be all cancelled and for naught held, and that the proper officers for the Metropolitan and Mortgage Improvement Company be ordered to issue new certificates in lieu thereof for one hundred and eighteen shares to the plaintiff, Adam Darling. That judgment be rendered in favor of the plaintiff against the defendant, M. A. Potts, for the balance found due on the account as stated, to-wit: for the sum of $2,394.59, and the said Potts be adjudged to pay the costs of this suit. That a stay of execution be ordered on the judgment for the balance due Darling until all the notes which M. A. Potts had executed,

and which are still outstanding for the deferred payments on the Clay county land and the Tenth street property, shall have been satisfied by Darling or by the property, or until credit shall have been given on said judgment for any part thereof which may not then have been satisfied out of the lands or paid by Darling.

"That some appropriate order be made looking to the payment of the costs out of the property, if possible. Whilst, as between Potts and Darling, Potts should pay the costs, yet as a payment cannot probably be realized from him now, the costs should be advanced from the property. But, as I have some interest in the costs, I deem it proper to make no suggestions as to how their payment should be enforced. The costs incurred before me consist only of the charges of the stenographer and typewriter, Mrs. Jessie Dale Altburger, whose bill is hereto attached, amounting to $237.62, and whatever may be taxed in favor of the referee for twenty days time spent in the hearing and consideration of this cause.

"All of which is respectfully submitted for the consideration and action of the court.

"J. McD. TRIMBLE, Referee."

And thereupon the defendants, Marcus A. Potts, Fred. E. Potts, and the National Bank of Kansas City, within four days—and it being on the fifteenth day of September, 1890, filed exceptions to said report, raising many objections thereto. Those which are urged upon the attention of this court will be more specifically adverted to in the course of this opinion. Defendant Fred. E. Potts also filed exceptions to the report. The exceptions were all overruled, the report confirmed, and judgment for the plaintiff as therein recommended. Defendants Marcus A. Potts and Fred. E. Potts then filed their motions for new trial and in arrest, which were overruled. They alone appealed.

The referee charged M. A. Potts interest on moneys received by him on the properties at the rate of eight per cent. per annum to September 8, 1890, and this, it is contended, was erroneous, for the reason that he had paid out large sums on the properties and for their preservation. But the report also shows that he was also allowed interest on the gross amount put in the properties by him, including the receipts. As he was charged with interest on the fund which did not belong to him, he was credited with interest at the same rate on the fund which did belong to him. If he had been charged with interest, and had been allowed no credit for interest on the fund paid out of his own pocket, then he would have had just cause to complain. The same result would have been reached had this item of receipts from the property been deducted from the gross amount of those advances and Darling allowed interest on the balance. As Potts was credited with interest on the amount of all his credits, it was proper that he should be charged with interest at the same rate on the amount received by him on the properties. The referee expressly stated in his report that he had allowed Potts interest on all of his credits at the rate of eight per cent., being the same rate that he charged him on the amount received by him on the properties.

The referee charged M. A. Potts with the value of five shares of Western Highlands stock which he found from the evidence was converted by said defendant to his own use in March, 1888, and one hundred and fifty shares of the same stock July 1, 1889, and all found to be the property of the plaintiff. The allowance of interest on the value of this stock from the time of the conversion is also complained of. If the stock was the property of the plaintiff and was converted by defendant to his own use, there was no error committed in charging him with the interest from the

time of the conversion.   No exception was taken to the referee's report on account of the rate of interest charged, nor is any such question raised in this court; the referee, however, adopted the report of Mr. Karnes in this regard, which is so stated by defendant, M. A. Potts, in his answer.   The finding as to the the ownership of the stock was justified by the testimony. Plaintiff stated that "the three hundred shares that Potts claimed, he told him that he had taken it; that the hundred and fifty shares was the part that they owned jointly and that Potts also said that these shares belonged to the tenth part that he, plaintiff, was entitled to."

There were five hundred and ninety shares of the Western Highlands stock altogether, one-half of which, or two hundred and ninety-five shares, were purchased by plaintiff, of which he received one hundred and forty shares, leaving one hundred and fifty shares which belong to him, and in regard to which there is no contention.   Potts had, unknown to the plaintiff, pledged three hundred shares in the lot, and left one hundred and fifty shares with the loan company, from which it seems that five shares of plaintiff's stock must have been included in the three hundred shares so pledged by Potts.   Potts himself testified as follows:

"*Q*. When did you get this one hundred and fifty shares from the treasurer?   *A*. About the time I gave it to him.   It was in the spring of 1888.   *   *   *

*Q*. What did you do with the other one hundred and fifty shares?   *A*. They were hypothecated with the National Loan and Trust Co.

*Q*. One hundred and fifty-five shares?   *A*. No, sir; one hundred and fifty shares, $15,000.

*Q*. It wasn't $29,500?   *A*. Previous to that time there had been issued to me $30,000 of stock.   I had

hypothecated that to get money to make a payment on the Randolph property."

It seems from the testimony that the one hundred and fifty shares held by the loan company belonged to plaintiff. As the testimony was somewhat conflicting in regard to this stock, we are inclined to defer to the opinion of the referee in regard to the matter.

There does not seem to be any merit in the exception to the report of the referee with reference to the credits claimed by Potts, and which were not allowed. The exception taken was because the report does not show what items were refused, and furnishes no basis by which the disallowed items could be ascertained. This objection was obviated by a supplemental report made by the referee which fully set out all of the disallowed items.

The next point for consideration is the report of the referee with reference to what is known and called in the pleadings as the "Baker tract," the owners of which incorporated under the name of Metropolitan Mortgage and Improvement Company, the interest in which was at that time certificates of one hundred and eighteen shares of the stock of said company.

It may be well enough to state that the matters of difference between these parties had been previously referred by agreement to Mr. J. V. C. Karnes, an arbitrator for his award, and while he heard evidence and made findings of some of the matters submitted to him, his award was not regarded as binding on the parties, and that they were not estopped by reason thereof; but the findings of Mr. Karnes and the subsequent conduct of the parties with reference thereto, are proper to be considered with the other evidence in the case in arriving at a proper determination as to what was the true relation of these parties to each other, and what were their respective interests and rights

in the properties in question.

The one hundred and eighteen shares of stock were sold at what may be denominated a foreclosure sale, though not strictly such, at which defendant, M. A. Potts, became the purchaser of it in the name of his brother, Fred. E. Potts. The purchase seems to have been made through one W. W. Morgan. The referee, Trimble, found that the defendant, M. A. Potts, when buying at his sale, raised the money with which he bought by pledging the trust profits, that he was trustee for plaintiff, and that the purchase should be considered simply as a payment by him of the debt for which the property was attempted to be sold, and that he should be deemed to yet hold the property in trust for plaintiff and that he should simply be allowed credit for the money he paid, as so much advanced by him to protect the property from sale. If the finding in this regard is supported by the evidence, and we think it is, then the law is, and the rule is well established, that in the management of trust property, the trustee cannot, without the knowledge and consent of the *cestui que trust*, directly or indirectly become a purchaser, and that if he does, he holds the property in trust for the beneficiary. And it makes no difference that the sale may be in every respect a fair one. 2 Pomeroy's Equity Jurisprudence [2 Ed.], secs. 958, 1052. Moreover, it may be followed into the hands of anyone who takes it with notice of the trust relations.

The evidence requisite to establish the trust as found by the referee was clear, cogent and unequivocal, and comes clearly within the rule laid down in *Johnson v. Quarles*, 46 Mo. 423; *Ringo v. Richardson*, 53 Mo. 385; *Kennedy v. Kennedy*, 57 Mo. 73, and *Allen v. Logan*, 96 Mo. 592. It makes no difference whether plaintiff ever offered to redeem this stock before the

sale or not. Yet there is evidence to show that he expressed a willingness and desire to do so.

There are a number of objections urged against the report of the referee, which seem to be more technical than real, and are not borne out by the facts and evidence in the case; and, for that reason, we have not thought it necessary to pass upon them *seriatim*.

The referee found in favor of the plaintiff. He had opportunities for judging of the credibility of the witnesses and their demeanor on the witness stand, which we have not. And, as was said by this court in the case of *Gimbel v. Pignero*, 62 Mo. 242: "The report of a referee stands as the verdict of a jury, and where there is any evidence to sustain it, we will suppose that the whole evidence was properly weighed and the requisite effect given to it." See, also, *Benevolent Association v. Kribben*, 48 Mo. 37; *Franz v. Dietrick*, 49 Mo. 95.

We have a right, in a case of this character, to examine and pass upon the testimony, and as the result thereof we are satisfied that the report of the referee is sustained by the evidence in every essential particular. It was full and complete and embraced within its scope every material issue tendered by the pleadings. We have been unable to see anything in it, or objection to it, that would justify us in setting it aside, or in sustaining the exceptions to any part of it. The judgment should be affirmed, and it is so ordered. All of this division concur,