## SIMMONS *vs.* CAMP.

[This case was argued at the last term, and the decision reserved.]

1. There was no error in overruling the motion for new trial on the first six grounds thereof.
2. There was no abuse of discretion in granting the new trial on the ground that the verdict was contrary to evidence.
3. If a corporator and director in a corporation, individually or in connection with others, got possession of enough of the assets of the company to pay a debt thereof, on which he was a surety, he became a trustee and custodian of that fund to pay the debts of the company; and if, instead of so doing, he appropriated the funds, alone or in connection with others, to make money for himself and the others, he cannot make his co-surety contribute to the payment of the debt by re-imbursing him, unless such co-surety participated in the misapplication also in the character of a corporator and director, and thus also a trustee, or advised the misapplication as counsel.
4. If the co-surety, as counsel, merely advised a sale of property of

the company, but did not participate by his advice in the misapplication of the fund arising from the sale, then, as counsel, he would not be within the principle ruled in *Jones vs. Hawkins*, 60 *Ga.*, 52. But if he advised that the sale would be good, in the sense that debts of the company could not be collected from the purchasers, then he could not profit by that advice, but would be estopped by it.

5. Profits realized from a reinvestment of funds misapplied, stood upon the same plane as the principal.

October 2, 1883.

New Trial. Trustees. Estoppel. Corporations. Attorney and Client. Before Judge ERWIN. Gwinnett Superior Court. September Term, 1882.

This litigation has been to the Supreme Court in different forms three times, and will be found reported in 62 *Ga.*, 73; 64 *Id.*, 726; and 65 *Id.*, 674. After the last decision, the complainant amended his bill. The leading ground for relief set up was as follows: The Gwinnett Manufacturing Company was solvent at the time what is called the Maltbie debt against the company, which formed the foundation of the litigation, was created, and complainant was a mere surety thereon; Camp, who indorsed before complainant, and was pursuing him for contribution as a co-surety, was a stockholder in the company, as were also his father and one Steadman. Complainant sold his stock in 1862, having only one share when the debt was made, and selling that a few days thereafter; afterwards, large dividends were made and certain property of the company was sold; the factory was burned in 1864, and the debris and property saved were sold and appropriated by Camp and Steadman. This property was more than enough to have paid the debts. The stockholders were liable for the debts of the company, and the property misappropriated was a trust fund for the payment of its debts; the company has become insolvent; Steadman has been adjudged a bankrupt, and the elder Camp is dead, leaving the defendant as his representative. The object of the bill was to hold Camp responsible for the funds and

property thus misapplied and for the amounts received by him individually and as administrator of his father. to have an accounting concerning these matters, and to enjoin Camp from proceeding against him.

The answer denied the leading allegations of the bill; admitted the original solvency of the company, its present insolvency, the fire, and that property had been sold; but alleged that Steadman, a large stockholder and the agent and superintendent of the company, sold the property and applied some of the proceeds to the payment of debts and appropriated the balance. It was also alleged that while Simmons sold his stock in 1862, he purchased other stock in 1863, and acted as president and legal adviser of the company until 1870.

Two leading questions were pressed in this court: first, whether Camp alone or with Steadman misapplied funds of the company sufficient to pay the Maltbie claim; and second, did Simmons take part in it as a member of the company, or as legal adviser of the company, or of Camp or Steadman? The evidence showed that, after Simmons sold his stock, Steadman, the agent and superintendent, desired his assistance in operating the factory, and transferred to him a number of shares of stock, the agreement being that he was to have the dividends on them for his services, Steadman guaranteeing that they would amount to $1,000 per month. Simmons acted until the fire in 1864, after which he received no further salary. He reconveyed the stock and resigned the presidency in 1865 or 1866. He is variously spoken of in the evidence as president and legal adviser. It was in evidence that the sales of property were with the consent of the stockholders, and Simmons was consulted as legal adviser; but as to what was the extent of the consultation or advice, the evidence is meagre. There seems to have been no directors as distinguished from the general stockholders. Of the property sold, Steadman purchased some machinery, and Camp became part owner with him in another factory to which it was transferred.

The jury found a special verdict, and on it the chancellor decreed a perpetual injunction against the defendant. He moved for a new trial, which was granted, and complainant excepted.

This brief statement will serve to explain the questions decided.

W. E. SIMMONS; S. J. WINN; MYNATT & HOWELL, for plaintiff in error.

CLARK & PACE; T. M. PEEPLES; HILLYER & BROTHER, for defendant.

JACKSON, Chief Justice.

We agree with the judge in his adjudication of the first, second, third, fourth, fifth and sixth grounds of the motion, overruling said motion on those grounds.

With his grant of the new trial on the seventh ground, so far as it grants it as contrary to evidence, we do not see clearly how we may legally, according to repeated rulings of this court, interfere. He presided on the trial of the case; heard all the testimony; is not satisfied with the verdict, and it is, therefore, right, in view of the repeated rulings of this court, that the case be tried again, especially as it is not clear from the record what relation the complainant bore to the Gwinnett Manufacturing Company during the transactions which resulted in the misapplication of the proceeds of a sufficiency of the property to have paid the Maltbie debt. Was he still a member of that company? Was he its president or its legal adviser? And to what extent, if at all, is he implicated in any misapplication of its assets, acting as president, or director, or counsel?

The law of the case, we think, is that if Camp, being a corporator and director, individually or in connection with others, got possession of enough of the assets of the company to pay the Maltbie debt, he became a trustee and

custodian of that fund to pay the debts of the company; and if, instead of paying those debts, he appropriated those funds, alone or in connection with others, to make money for himself and the others, instead of paying the Maltbie debt, then he cannot make Simmons, his co-surety, contribute to its payment by reimbursing him, unless Simmons participated in its misapplication also in the character of a corporator and director, and thus also a trustee, or advised the misapplication as counsel. The corporators had a perfect right to sell the property of the company; but when they bought it themselves, or when they got the money for it, they were bound—all being directors as well as corporators—to apply the proceeds, first, to the payment of the debts, this debt of Maltbie among the rest, if there were others outstanding and not barred.

It is immaterial whether the sale was fair or fraudulent; as trustees of a fund which should go first to the extinguishment of the debts of the corporation, when they did not apply it to those debts, but put it to use for their individual use, they became legally responsible for the debt; and if Camp was such trustee and did so misapply enough of the fund to pay the Maltbie debt, he cannot make Simmons contribute, because the debt was paid out of money in his hands of the company, which the law made it his duty to apply to the debts, and was not paid with his own money. But if Simmons was also a corporator and director, and participated in the misapplication, he, of course, cannot set up this defence, because he too, in such a case, would be using the money of his *cestui que trust*. It does not matter what part of the profit went into Camp's hands, and what into the pockets of others acting with him, he would be responsible for all; because, as trustee, he would have misapplied all, or assisted others in so doing. And so in regard to Simmons, if he were director or president and participator in the misapplication. Code, §3151. If, as counsel, Simmons merely advised the sale, but did not participate by his advice in the misapplication of

the fund arising from the sale, then, as counsel, he would not be within the principle ruled in *Jones vs. Hawkins*, 60 *Ga.*, 52. But if his advice extended legitimately to that extent, then he would be, and could not set off the fruits borne by his own advice given for fees as counsel. We mean to say that if Simmons advised them that the sale would be good in the sense that debts of the company could not be collected from them as purchasers, then he could not profit by that advice, but would be estopped. The same principle in substance, was also recognized in *Kennedy vs. Redwine*, 59 *Ga.*, 327.

So, if Simmons advised Camp, as his counsel, or Steadman, as his, and Camp bought from Steadman, that the title to the property the Gwinnett Company sold would be good against this debt, or the debts of the company generally, so as to embrace this, then Simmons would be estopped from setting off the fund, acquired by that advice as to title, against Camp's claim for contribution; but if the advice of Simmons as such counsel extended merely to the fact that the sale itself would convey title out of the company into Camp and Steadman, and not to the other fact that the sale would be good against this debt, or the debts generally so as to embrace this, then Simmons would not be estopped by such advice. Were the debts generally, or this debt, in contemplation when the advice was given, if given at all? Or was the counsel consulted merely in regard to the power to sell and convey in the manner done? It seems to us these would be pertinent inquiries.

Further, it seems to us, that the profits which the respective parties realized out of the investment of the Gwinnett company into the other company or partnership, might well enter into the consideration of the case in equity: because, if Camp were trustee for the creditors of the Gwinnett company, he was for Maltbie, and Maltbie had a right to make him account for profits made as trustee, and when he came upon Simmons for contribution as co-surety, Simmons would also have the right

to the like account for the purpose of setting those profits off in equity against the demand for contribution, unless his legal advice to Camp or Steadman induced the Newton county venture as one safe and free from liability for outstanding debts of the Gwinnett company. We use the expression " advice to Steadman," because it seems that Camp bought from Steadman, and not directly from the company ; if Camp bought from the company, Simmons' advice to Steadman could not affect him in a contest with Camp. Code, §2332; 60 *Ga.*, 228.

The foregoing points, we think, are clearly deducible from the authorities: Morawetz on Corp., p. 339; Field on Corp., §§172, 403 ; 8 Peters, 286 ; 21 Wallace, 616; 7 Wallace, 392; 15 Howard, 307; 15 Mass., 522 ; 16 *Ib.*, 14; 17 Barb., 397 ; 29 *Ib.*, 359; Story's Eq. Jur., 1252, 9 Wis., 194; 43 *Ib.*, 433; 16 Md., 456 ; 43 N. H., 263 ; Thompson's Li. Off. and Agts. of Corp., p. 397    8 *Ga.*, 531 · 24 *Ib.*, 590, 607; 59 *Ib.*, 327; 60 *Ib.*, 52, 228.

By putting to the jury questions which will elicit the facts on the points indicated, and applying the law thereon, we presume that the case can be fully and finally adjudicated.

We add that, while exception to a decree is no good ground of itself for new trial on the facts, it may strengthen the grant of it, if well founded , but we put this grant not on this exception at all, but on the well settled rule that this court does not interfere in the first grant of it by the presiding judge.

Exceptions outside of the motion for a new trial are not ruled, because, not being excepted to *pendente lite*, they are not here in time.

We are not prepared, however, to say that if Camp realized as a stockholder from the money borrowed from Maltbie enough to pay the Maltbie debt in dividends, it being invested at once in the factory, and Simmons realized nothing, because he retired at once from the factory, in such a case that there is no equity in this fact, if a fact,

in bar of the claim of contribution. But it is not before us properly, and we hold it an open question.

Judgment affirmed.