THE TOBIN CANNING COMPANY v. JOHN A. FRASER.

No. 6933.

1.  **Guaranty—Diligence.**—A guaranty that "the undersigned agree to guarantee and become responsible on the within note to the extent of $800," is unconditional and is an absolute promise to pay.  It is not discharged by the holder granting indulgence to the principal after maturity.

2.  **Same.**—In a guaranty for collection the holder is charged with diligence, and if by his negligence or laches a loss occurs it must fall upon him.   Rev. Stats., arts. 3660–3668.

3.  **Alteration.**—When one of the guarantors was released on condition and his name erased, the conditions failing he again signed the guaranty, there is no alteration, and a plea of non est factum by the others upon these facts is not sustained.

4.  **Director of Corporation— Duties and Liabilities.**—The law will not permit a director of an insolvent corporation to purchase all of its assets, or by the purchase of all its assets render the corporation insolvent, at execution sale to which he is not a party for a less consideration than its value without requiring him to account for the property or its value.   When a director so purchases the property and refuses to account he is chargeable with its value, with the profits or interest therefrom as a trust fund for the benefit of the corporation, its creditors, and shareholders.   See example.

5.  **Same—Fact Case.**—The plaintiff, a director of an insolvent corporation, having bought in the assets of the corporation at a sum much less than their value, can not avoid accounting for the excess in the value of the property over what it cost him in his purchase and necessary expenses about it, as a defense to his action.  See example.

APPEAL from Bexar.   Tried below before Hon. G. H. Noonan.
The opinion states the case.

*Henry E. Vernor* and *John H. James,* for appellants.—1.  A guaranty is a separate contract from that of the principal.   A guarantor is only liable when default is made by the principal and notice thereof given in a reasonable time.   To fix the liability of a guarantor due diligence must be used by the holder of the note in instituting and prosecuting suit against the maker thereof.

2.   If unreasonable delay is shown in the institution or prosecution of the suit against the principal, whereby or by reason of the wrongful acts of the plaintiff in depriving the principal of his property the principal becomes insolvent, the guarantor is rendered unable to reimburse himself out of the property of the principal, such guarantor is released from all liability on his guaranty, to the extent at least he is so rendered unable to reimburse himself.

3.   The court erred in not instructing the jury that the erasure of the name of J. S. Thornton, one of the signers of the guaranty indorsed on the note sued on, from said guaranty by plaintiff or by said Thornton with plaintiff's consent, releases the other signers of said guaranty, viz., the defendants Simpson and Upson, from all liability on said guaranty, and in refusing to so instruct the jury, as the evidence showed

such erasure was made and a new note drawn and signed by said J. S. Thornton and received by plaintiff in lieu of the note sued on. 2 Dan. Neg. Ins., sec. 1387, pp. 350, 352, 353; Chit. on Bills, 11 Am. ed., 183, 183a; Benj. Chal. Dig. Bills and Notes, p. 251, ex. 1; Bank v. Richmond, 121 Mass., 110.

4. Where a director or officer of a company wrongfully converts property of his company and fails to account therefor he is liable to the company for the fair value of the property at the time of such conversion, and is not entitled to a credit for any money he may have paid or expenses incurred in obtaining the property so converted, without the consent or approval of the company; and the fair value thereof at the time of the conversion may be legally offset by the company against any claim for money loaned he may have against the company.

*William Aubrey,* for appellee. — 1. The indorsement on a note, joint and several in its terms, before its delivery to the payee, of the following words, "we the undersigned agree to guarantee and become responsible on the within note to the extent of $800," signed by the obligors, imports a joint and several primary liability against such obligors, and not a collateral or secondary liability. Cook v. Southwick, 9 Texas, 615; Carr v. Rowland, 14 Texas, 277; Shepard v. Phears, 35 Texas, 772; Harrison v. Sheirburn, 36 Texas, 75; White v. Howland, 9 Mass., 314; Moies v. Bird, 11 Mass., 436; Bank v. Lougee, 108 Mass., 371; Aunsbaugh v. Gerhardt, 11 Pa. St., 482; Gage v. Bank, 79 Ill., 62; Stage v. Olds, 12 Ohio, 168; Leonard v. Sweetzer, 16 Ohio, 5; Newcomb v. Hall, 90 N. Y., 326; McMurray v. Noyes, 72 N. Y., 523.

2. To discharge the liability of parties to a note by an alteration thereof, such alteration must be material and change the legal effect of the note. The erasure of his name by one of the parties, conditioned to take effect when consented to by the other parties to the instrument, and immediately restored when that consent was refused, does not have the effect of releasing such other parties. 2 Dan. on Neg. Ins., secs. 1390–1398.

3. A director of an insolvent corporation may at execution sale buy in the property of the corporation, particularly when he is the creditor of the corporation and is the owner of one-third of its stock (three times as much as any other person), and the other members of the corporation neglect or disregard its affairs, and the purchase is made for the purpose of protecting his interests.

4. Even if a purchase by a director of a corporation at execution sale be illegal, it is at most only voidable, and must be promptly disaffirmed by the corporation or its officers.

5. The purchase of the property by appellee complained of can not be urged in offset or reconvention in this suit upon a promissory note, being founded, if founded at all, upon an alleged tort, and having no

connection with appellee's cause of action.   Rev. Stats., art. 649; Schmidt v. Rost, 1 Ct. App. C. C., sec. 684; Duncan v. Magette, 25 Texas, 245; Carothers v. Thorp, 21 Texas, 358; Couch v. Parker, 1 Ct. App. C. C., 436.

FISHER, JUDGE, *Section B.*—Appellee instituted this suit January 31, 1887, against the Tobin Canning Company as the maker of a certain promissory note for $1000, dated September 27, 1884, with 12 per cent interest, payable to appellee thirty days after date, and providing for 10 per cent as attorney fees for collection; and also against J. P. Simpson, J. B. Lacoste, C. Upson, and J. S. Thornton as guarantors, by the following promise in writing indorsed on said note: "We the undersigned agree to guarantee and become responsible on the within note to the extent of $800." [Signed by the above defendants.]

The Tobin Canning Company is a corporation created under the laws of this State.   Its object and purpose is to prepare and preserve chile con carne and meats and fruits in cans, etc.   The defendants by their answers presented the following defenses:

"1.   That plaintiff did not institute suit against the maker of the note sued on before the first or second term of the District Court to which suit could have been brought after plaintiff's alleged cause of action accrued, nor show any cause why such suit was not so instituted.

"2.   That the suit was not instituted until more than two years and not until nine terms of the District Court of said Bexar County had been duly and regularly held after the accrual of said cause of action, without showing any cause therefor, and that thereby plaintiff has been guilty of such want of due diligence and gross laches as to relieve defendants from all liability as guarantors or otherwise on said note.

"3.   That it does not appear from plaintiff's petition that any demand was made for the payment of said note within a reasonable time or that any notice was given of the non-payment of the same.   And for general exceptions defendants say that plaintiff's petition states no cause of action against them."

Which exceptions were overruled by the court, and the defendants duly excepted thereto.

March 11, 1887, the defendant Tobin Canning Company of San Antonio filed its plea in abatement to the effect that there was a misnomer in plaintiff's petition in suing and in styling the corporate name of this defendant as "The Tobin Canning Company," when its corporate name was the "Tobin Canning Company of San Antonio."   This defendant also in its answer pleaded non est factum as to the note sued on, and made affidavit thereto by its president, M. C. Shiner.   All of the defendants in their answers alleged that at the time and long after the note sued on became due and payable the said company claimed by the plaintiffs to be maker thereof was perfectly solvent and had property

in said Bexar County free of incumbrance and subject to execution ample and much more than sufficient to pay and satisfy all of its indebtedness, out of which said plaintiff by the exercise of due diligence might have collected and realized the full amount of said note; all of which plaintiff well knew. That on or about the 29th of July, 1885, when said company was so solvent, the plaintiff, then being the treasurer, a director, and a stockholder of said company, wrongfully and willfully caused property of the value of at least $5000 of said company to be sold, bid in by himself, and unnecessarily sacrificed for the grossly inadequate sum of about $160; that he wrongfully disposed of said property and converted the proceeds thereof to his own use in disregard of his promise and obligation to bid in and hold said property for the use and benefit of all the stockholders of said company; that afterward said plaintiff wrongfully took and converted to his own use the building belonging to said company, of the value of $1000 or more; that by reason of the wrongful acts of plaintiff aforesaid said company was rendered and is insolvent; that the property of said company so taken and converted by plaintiff was an offset to and a full extinguishment of said note. The defendants also alleged that said note had been fully paid and satisfied by the chile con carne of said company and the proceeds thereof received by plaintiff.

The defendant Tobin Canning Company of San Antonio specially answered, that if it is in any manner liable upon said note, which is denied, the same arises from money loaned to carry on its business of manufacturing chile con carne, but by reason of the wrongful appropriation of its property as aforesaid plaintiff deprived said company of the means necessary to carry on said business to its damage $5000. Said company also pleaded the value of said property so appropriated by plaintiff, viz., $5000, in reconvention, less $160 paid by plaintiff in the purchase of the same, and prayed a judgment therefor.

All of the defendants pleaded a general denial. The defendants I. P. Simpson, J. B. Lacoste, C. Upson, and J. S. Thornton, complained of as guarantors on said note, each specially answered that they signed said guaranty upon an express agreement and condition made with each of them by said plaintiff at and before the signing of said guaranty, that they or either of them were not to be bound by the same unless the plaintiff also procured the signatures thereto of all the other stockholders of said company, to-wit, Augustus Belknap, M. C. Shiner, and T. M. McDaniel, each of whom was solvent and amply able to pay the full amount of said note, which said signatures of said other stockholders plaintiff wholly failed to procure, whereby these defendants were not liable on said guaranty. Said defendants, guarantors, also specially answered by alleging that said guaranty was a new contract, without consideration, made subsequent to and independent of said note, and of no benefit to them or any of them, and each pleaded non

est factum thereto and verified the same by their respective affidavits. Said defendants, guarantors, also answered that they notified and requested plaintiff to institute suit on said note against said company when the same became due and payable, and while said company was solvent as aforesaid, but plaintiff failed and refused to bring such suit until more than two years thereafter, and after nine terms of said District Court had been duly and regularly held, and after said company had become insolvent; and the said guarantors, defendants, claimed thereby that the plaintiff had been guilty of gross laches, and that by reason thereof and the wrongful acts aforesaid of plaintiff they were discharged from all liability on said guaranty.

The defendants I. P. Simpson, J. B. Lacoste, and C. Upson further specially answered, alleging that long after said note became due and payable and after the signing of said guaranty, said plaintiff drew a new note in place of and altering the terms of said guaranty in amount and time of payment, which said new note was signed by said defendant J. S. Thornton, and his signature erased from the signatures to said guaranty without the knowledge, consent, or approval of these defendants, or either of them, and to their detriment and injury, by reason of which they or either of them did not execute the guaranty sued on, and they each pleaded non est factum thereto and made affidavit thereof, and they prayed judgment for costs.

The case was tried before a jury, who returned a verdict against all of the defendants for the sum of $259.55, with interest from the date of note.   Judgment was rendered November 8, 1888, in favor of appellee for $389.34.   The interest on the note was paid up to September, 1885, and the note was credited with $421.45, as appears by indorsement entered on said note in August, 1885, leaving due September 1, 1885, a balance of $578.55.

The second and seventh assignments of error urge that the court should have sustained appellants' demurrer to the petition, because it appears that appellee was guilty of laches and negligence in failing to use diligence in collecting his demand; and also complains that the court failed and refused a charge on this branch of the case.

The court did not err in this respect.   The guaranty appears to be unconditional and an absolute promise to pay.   The indulgence of the principal in extending the time of payment not predicated upon an agreement will not operate as a discharge of the guarantor in such an undertaking as this one sued on.   There is a broad distinction between a guaranty of payment of a note and guaranty dependent upon conditions that by the contract impose duties upon the holder of the paper or that are simply guaranties for collection.   In the latter cases the holder is charged with diligence, and if by his negligence or laches a loss occurs, it must fall upon him.   As to the effect of guaranties absolute and unconditional there is a conflict of authority.   Our views here ex-

pressed, we think, are more in keeping with the spirit of the statute upon the question and the construction that our courts have given it. Sayles' Civ. Stats., arts. 3660, 3668.

The court did not err in failing to present any issues to the jury under the pleas of non est factum and a discharge of the guaranties by reason of a change in the contract in the release of one of the guarantors. The facts in evidence establish that the contract sued on was executed by the defendant corporation, and that the money received was used in the legitimate confines of the business. There was no release of Thornton. His name was erased upon conditions, and when they failed his name was promptly rewritten in the guaranty. There was no intent or purpose to release him.

The view we take of the case renders it unnecessary to notice any other assignments except so much of the eighth as charges the court with error in failing to grant appellants' motion for a new trial, upon the ground that the note and guaranty was fully discharged by reason of the receipt and conversion of the corporate assets by appellee.

The plaintiff and the guarantors were in 1884 and 1885 directors of the defendant corporation. In 1885 creditors of the corporation obtained in the Justice Courts two judgments against the corporation. In July and September, 1885, at execution sales under these judgments, the appellee, then being a director, purchased the machinery and house, the property of the corporation. It seems that this property constituted the entire assets of the concern. The plaintiff expended in this purchase of the property the sum of $448.75. The property was purchased for the use and benefit of plaintiff, and he has not accounted to the defendants for the same or its proceeds. Plaintiff was not a party to the judgments under which the sales were made. The evidence establishes that the corporation at the time of the sales had virtually ceased business, and plaintiff testifies it was then insolvent. The evidence is satisfactory upon the point that the corporation was at the time of the sale insolvent, or it was rendered insolvent by appellee's purchase and absorption of its assets. The plaintiff in the first part of his evidence as it appears in the record states that $1000 is all the machinery was worth and $200 the value of the house at the time of sale, and that he subsequently sold the machinery in way of trade for $1000. In subsequent portions of the record he only values the machinery at $600. Witness Upson testified that the building and machinery cost not less than $5000. Witness Barnard testifies that he was familiar with the machinery purchased by appellee at the execution sale, and it was first-class when first bought, and it had not been in use more than three months. The property purchased by appellee was worth $2000. Witness Grosbeck, for the plaintiff, testified that he has the building for sale as agent of plaintiff, and he sold for plaintiff the machinery at $1000, which went in on the purchase of a house for plaintiff. He con-

siders the machinery not worth over $1000 or $1200 and the house is not worth over $400.

The court properly instructed the jury as to the effect of the purchase by plaintiff of the property of the corporation, and that they should charge him with the value of the property less the amount he had expended in its purchase, as the amount so paid out by him was not more than enough to satisfy the judgments and the ground rent due the owner of the land upon which the property was situated. Appellee here contends that the plaintiff is not liable for the value of the property purchased by him, and that its value is not a proper subject of offset in this case.

The assets of an insolvent corporation is a fund subject to the claims of creditors, and upon which they have an equitable lien for the payment of their demands. The property is chargeable in the hands of the directors as a trust, for the preservation of which they are bound to good faith and fair dealing in the management and disposition thereof. They are the agents and trustees of the corporation, and when they deal with its important interests they are charged with the utmost fairness, and will not be permitted to reap benefits to the injury of the corporation and its creditors. The law will not permit the directors to participate in acts relative to the corporate property that will result in their personal and private advantage to the injury of the corporation, when their duty requires them to use all reasonable efforts to the accomplishment of results that will benefit the corporation and the creditors and stockholders thereof.

The law will not permit a director of an insolvent corporation to purchase all of its assets, or by his purchase of all the assets render the incorporation insolvent, at execution sale to which he is not a party, for a less consideration than the value of the property, without requiring him to account for the property or its value. When a director so purchases the property and refuses to account for the same or its value he is chargeable with the property or its value, with the profits or interest accruing therefrom, as a trust fund for the use and benefit of the corporation, its creditors, and stockholders. The following authorities illustrate these principles: Bank v. Investment Co., 74 Texas, 432; Seale v. Baker, 70 Texas, 291; Ward v. Davidson, 1 S. W. Rep., 847; Jones, McDowell & Co. v. Mechanical and Agricultural Co., 38 Ark., 20; Hoyle v. Railway, 54 N. Y., 315; Coal Co. v. Sherman, 30 Barb., 555; Rouse v. Bank, 46 Ohio St., 493; Ashton v. Dartway, 84 Cal., 61; 1 Mora. on Priv. Corp., secs. 519, 520, 523–525; 2 Mora. on Priv. Corp., secs. 787–789, 803.

Applying these principles to the facts of the case we find the plaintiff purchasing at execution sale all of the property of the corporation, he being then one of its directors, and paying therefor the sum of $248.75, and refusing to account to the corporation for said property or

its value, and appropriating the same to his individual use. Giving to the entire evidence on the question of value its proper weight and effect, and placing thereon an estimate of value as favorable to the interests of plaintiff as can consistently be done under the testimony, we find that the value of the property so purchased by plaintiff will not fall short of $1200. This sum.is properly chargeable with interest at 8 per cent per annum from the times of purchase, which seem to have occurred in July and September, 1885. Placing the appropriation of the property by plaintiff at September, 1885, and charging him with its value and interest from then to November 8, 1888, the time judgment was rendered, and giving him credit for the amount expended in its purchase with interest thereon at 8 per cent per annum, and also allowing him credit for the balance due upon the note with interest from September, 1885, it will be seen that the value of the property is more than enough to discharge plaintiff's demand, with a balance due in favor of the corporation.

There is no force in the contention that the appellants can not charge appellee with the value of the property and have it applied in discharge of the note. The value of this property is a fund held by plaintiff in trust to be applied to the payment of the corporate debts, for which he is accountable whenever the demand is made by the corporation. The amount of this fund is rendered certain by evidence.

We think the court erred in not granting appellants' motion for new trial. We conclude the case should be reversed and remanded, and so report it.

*Reversed and remanded.*

Adopted June 16, 1891.