## FRICKER *v.* AMERICUS MANUFACTURING AND IMPROVEMENT COMPANY.

1. If a necessary party plaintiff to a bill of exceptions was omitted therefrom, it could be added by amendment at its own instance and that of the plaintiff in error, not changing the record or raising new points, but simply joining the new party in the bill of exceptions already filed by the other.
2. Where an auditor filed, as a part of the brief of evidence accompanying his report, a stenographic report of the testimony, it became a part of the record, and it can be specified and brought to this court as such; and the bill of exceptions will not be dismissed because there is no condensed and narrative brief.
3. Where the clerk of the superior court certified that when he went into office on January 2, 1905, he found the bill of exceptions filed on December 31, 1904, that it had been impossible to transcribe the record within ten days, and that he forwarded it at once upon completing a copy on January 20, 1905; and where it does not appear that the plaintiff in error or his counsel caused or contributed to the delay or were in any way at fault, a motion to dismiss the bill of exceptions will be overruled.
4. Where in an action of an equitable nature exceptions are filed to an auditor's report, mere general exceptions that such ruling and findings were erroneous under the pleadings and evidence will furnish no ground for reversal.
5. Where an equitable petition alleged that the defendant, who was a director and the secretary and treasurer of the petitioning corporation, had been acting for it and was still purporting to do so, and occupied a fiduciary relation to it; that he purchased its property at sheriff's sale,

and took a deed in his own name; that he encumbered it with a mortgage to secure a loan, the amount of which was used in paying the purchase-money at the sheriff's sale, and with another mortgage to certain loan brokers who aided in the transaction; that he was a man of small means and unable to respond in damages; that he had taken possession of all of the plaintiff's property and had received rents, issues, and profits therefrom; that an accounting was necessary to ascertain what, if anything, should be paid to him, and that until such accounting it was impossible to determine definitely the status; and where the plaintiff offered to do equity and to pay what should be found justly due, if anything, and sought to have the defendant declared to hold the property in trust for it, and that the decree be so molded as to do equity and to return the property to the plaintiff, the petition was not demurrable for want of a tender to the defendant.

6. None of the other grounds of the demurrer were well taken.

7. If the auditor failed to report with sufficient fullness on any issue, a motion for a re-reference, not an exception to his report, was the proper remedy.

8. There was no error in refusing to dismiss the case, in the nature of a nonsuit.

9. Where a number of letters were admitted in evidence and an exception was taken to their admission as a whole, and some of them were admissible, the exception can not be sustained.

10. If an agent or person occupying a fiduciary relation towards an owner of property bought it in at sheriff's sale, took title in his own name, and occupied it in part and in part received rents from it, and upon an equitable proceeding it was determined that the owner was entitled to recover the property and have an accounting for rents, issues, and profits, the liability of the defendant was not necessarily limited to the amount of rents actually collected by him while in possession, but would include what he should have received on that account by proper diligence, that is, the reasonable rental value of the property.

11. A director of a corporation, who is also its secretary and treasurer and its agent to procure a loan for it to save its property from sheriff's sale, occupies a fiduciary relation towards it, and can not acquire interests in the property adverse to the company.

12. If a person occupying a fiduciary relation to a corporation, and who was purporting to act for it in procuring a loan to prevent the loss of its property at sheriff's sale, procured a loan and bought the property in his own name, upon a proceeding by equitable petition to recover the property and have an accounting, brought by the company against him, he was not entitled, in addition to his reasonable expenses in procuring the loan, to be credited also with expenses incurred by him in an effort to effect a reorganization of the company without its knowledge or consent, there being no agreement as to the amount for procuring the loan separately.

13. The bringing of an equitable action for the purpose of recovering the property and having an accounting did not operate to ratify the effort to effect a reorganization of the company without its consent.

14. Mesne profit or rental value does not ordinarily bear interest, at least until it becomes a liquidated sum.

15. The auditor reported how the balance between the parties stood on March 1, 1901, and that the amount due by the defendant since March 1, 1901, should be credited with all sums paid out by the defendant for interest on the $35,000 loan procured by him, at seven per cent. per annum, for taxes, insurance, and caring for the property, said credits to be ascertained by the court on the trial of the case. *Held*, that this finding contemplated the determination by the court, at the trial, of the balance since March 1, 1901; and this could not be properly done in entering up a decree by merely taking the amount which the auditor had found to be the rental value of the property up to March 1, 1901, charging defendant with the same rate per month, after that date, and allowing no credits, without any further investigation to ascertain the correct balance at the date of the decree.

16. Where, in a litigation of the character indicated in the preceding headnote, the defendant claimed credit on account of an amount which he had agreed to pay to certain loan brokers, and an amendment was offered by the plaintiff, charging collusion between the defendant and such brokers, that he had given to them a mortgage on the property involved in the controversy, which included not only legitimate charges but also certain charges which were attacked as unlawful, and praying that the brokers be made parties, they being residents, that full relief be granted with respect to the matter, and that their mortgage be canceled, such amendment was proper and should have been allowed, and the brokers should have been made parties defendant.

17. In determining between the parties whether the defendant should be allowed credit for certain payments made by him, a corporation to whom the payments were made is not a necessary party, and its absence will not furnish ground for demurrer by the defendant.

18. In decreeing that possession of the property involved in the controversy should be taken from the defendant and delivered to the plaintiff, there being an outstanding mortgage, the court did not err in the equitable terms which were placed upon the plaintiff, or in requiring it to indemnify the defendant against the mortgage, under the facts of this case.

19. In an equitable action it is the province of the judge to determine upon whom costs shall fall; and this determination will not be reversed, unless the discretion of the presiding judge is abused.

20. The judgment of the trial court is reversed and the case remanded, with directions as to its further progress.

Argued May 20,—Decided November 13, 1905.

Exceptions to auditor's report. Before Judge Littlejohn. Sumter superior court. November 8, 1904.

On April 12th, 1900, the Americus Manufacturing and Improvement Company filed its equitable petition against Charles A. Fricker. Briefly stated, it contended as follows: The plaintiff

owned a hotel of the value of $75,000, and of the rental value of $500 per month. It was encumbered with a mortgage for $35,000, which was foreclosed. It was seeking to procure a loan to prevent the sale or save itself from loss of its property. Fricker was a director and its secretary and treasurer, and was engaged in assisting to procure a loan for it. While so acting, in company with its vice-president he went to New York for that purpose. Instead of procuring a loan for it, he procured one in his own name, and bought in the property at sheriff's sale, and, though purporting to be acting for the plaintiff, took the title in his own name, paying for the purchase-price the money received from the loan referred to above and $5,000 borrowed from Weyman & Connors, loan brokers, because the amount of the bid was in excess of the loan obtained in New York. He agreed to pay that firm, as brokers, $5,000 for services in procuring the loan and in seeking to effect a reorganization. He placed mortgages on the property for this loan, and to secure the amount claimed to be due Weyman & Connors. A charter was obtained by the defendant and an offer made to the old stockholders to take stock in the new company by paying $15 per share; but the proposed new company never became active or received the property. Fraud, collusion, etc. were charged. It was alleged that defendant had taken possession of the property and enjoyed its rents, issues, and profits, and was liable therefor; that the amounts of commissions and expenses claimed by him to be due were not correct; that an accounting was necessary before it could be determined how much, if anything, plaintiff should pay him; and that he was a man of small means and unable to respond in damages. Plaintiff at first alleged a tender, but by amendment alleged that the defendant had taken possession of all of its property and rendered it unable to make one; and that certain stockholders had made a tender, offering to pay what he had expended, but requiring him to account for what he had received. Plaintiff offered to do equity, and sought to recover the property and have an accounting. Defendant denied the substantial allegations, especially those as to fraud, collusion, and misuse of his position in the company. He contended, in brief, as follows: He went to New York to assist in obtaining a loan for the company; it was found to be impossible; it was suggested to him that a reorganization might be had; that he might take the loan temporarily in his own name, buy in the property, obtain a new

charter and effect a reorganization on terms just and equitable to the original stockholders. In the emergency he proceeded, but in the utmost good faith and to save the property for the stockholders. He had expended the rents and profits not for his own individual benefit but to keep up the property. He admitted that he did not inform the company or its stockholders, on returning from New York before the sale, what had been done, for fear that certain persons who were antagonistic to the plan might thwart it. After he bought in the property he offered to reorganize by allowing each of the stockholders to take the same amount of stock in the new company as they held in the old one, paying fifteen dollars per share, $10,000 of which was to be used to pay Weyman & Connors and $5,000 for improving the property. As this was not accepted, he was left with the property and debts on his hands. Plaintiff has waived its right to have a conveyance; but he is willing to convey the property to it, if it will take up the $35,000 loan and the indebtedness to Weyman & Connors, and pay his reasonable attorney's fees and reasonable compensation for his time and trouble. He denied any tender.

The case was referred to an auditor. He found, that the defendant occupied the position of a fiduciary agent of the plaintiff; that he could not lawfully buy the property and hold the title adversely to it; that the defendant in an accounting was not entitled to credit for the amount agreed to be paid Weyman & Connors for aiding in making the loan and in connection with the attempted reorganization, but only for a reasonable compensation for their services in connection with making the loan; that, as between the plaintiff and defendant, the defendant was chargeable with the rental value of the property while in his possession, and should be credited with the lawful expenses paid by him, including the amount properly chargeable to the company on account of Weyman & Connors, and any amounts paid by him for interest on the $35,000 loaned, and for taxes; and that the plaintiff should recover the property upon assuming the loan and indemnifying the defendant against liability on account thereof.

Both sides excepted to the report. All the exceptions were overruled, except certain ones which resulted in the correction of special items; and a decree was entered. The defendant filed a bill of exceptions, and the plaintiff a cross-bill.

*J. H. Lumpkin* and *Smith, Hammond & Smith,* for plaintiff in error.   *W. P. Wallis* and *G. R. Ellis,* contra.

LUMPKIN, J.   (After stating the facts.)   This case was referred to an auditor.   To his report the defendant filed nineteen exceptions of law and seven exceptions of fact.   The plaintiff was also dissatisfied, but contented itself with nine exceptions of law and one of fact.   The defendant filed a bill of exceptions, and the plaintiff filed a cross-bill.   The record brought up by the main bill of exceptions contained six hundred and seventy-three typewritten pages.   In view of the size of the record and the number of the exceptions taken by the parties, it might be said that, relatively to the result of the trial, both were in a state of elaborate dissatisfaction.

1. A motion was made to dismiss the writ of error, on several grounds.   One was that there was a "misjoinder (?) of parties plaintiff in error," the surety on the bond given by the defendant not being joined; and also that such surety could not "make itself a party and set up matters not of record in the lower court."   On the hearing of the application for the appointment of a receiver, which was prayed for in the petition, the presiding judge refused it on condition that the defendant would give bond with surety to pay to the plaintiff such sums as he might be chargeable with for the use of the property, in case the plaintiff should prevail.   The bond was given, the plaintiff did prevail, and a decree was entered which included a judgment on the bond against the surety.   The defendant excepted.   In this court the surety asked to be made a party plaintiff in error, and the original plaintiff in error concurred in the motion.   The motion to dismiss on this ground is not well taken.   The surety was interested with the principal in reversing the judgment.   If it was in fact a necessary party to the bill of exceptions, which we understand to be the point intended to be raised by the motion to dismiss, it could be added by amendment from the record, not changing the record or raising new points, but simply joining in the bill of exceptions already filed by its principal.   In this instance the surety moved to be made a party plaintiff in error, and the original·plaintiff in error concurred in the motion.   *Epping* v. *Aiken,* 71 *Ga.* 682; *Western Union Tel. Co.* v. *Griffith,* 111 *Ga.* 552; *Ramey* v. *O'Byrne,* 121 *Ga.* 516.   The decisions cited by counsel to the effect that all parties interested in

sustaining a judgment must be served with the bill of exceptions are not applicable to a case like this, where the party not served is not interested in sustaining the judgment of the trial court, but is interested along with the plaintiff in error in seeking to reverse it. The motion to amend is allowed.

2. Another ground of the motion to dismiss was that the evidence was not reduced to a brief or narrative form, but consisted of the stenographic report written out. The auditor states in his report that "counsel for plaintiff and defendant agreed that the auditor should not make a brief of the oral or documentary evidence submitted, but should file with his report the original documents introduced in evidence, and the stenographic report of the oral evidence as taken on the hearing, all of which, in accordance with said consent, are made a part of this report and submitted herewith." Where the auditor filed, as a part of the brief of evidence, a stenographic report of the testimony, it became a part of the record and could be specified and brought to this court as such; and the bill of exceptions will not be dismissed on the ground that there is no such condensed and narrative brief. *Arendale* v. *Smith*, 107 *Ga.* 494; *Schmidt* v. *Mitchell*, 117 *Ga.* 6. Whether the evidence is in such a condition as to furnish ground for a reversal based on it is a different question.

3. It is contended that the record was not transmitted within the time prescribed by law. The clerk of the superior court certified that when he went into office on January 2, 1905, he found the bill of exceptions filed on December 31, 1904; that it had been impossible to transcribe the record within ten days; and that he forwarded it at once upon completing such copy on January 20, 1905. It does not appear that the plaintiff in error or his counsel caused or contributed to the delay, but that it resulted from an inability on the part of the clerk to prepare so large a record in a short time. Civil Code, §5555.

4. It would be of little utility to discuss separately each of the numerous exceptions to the auditor's report. A number of them allege in substance merely that certain rulings and findings are erroneous under the pleadings and evidence. General exceptions of this class furnish no ground for reversal. It is difficult, if not impracticable, for a court to successfully search through a brief of evidence containing hundreds of pages to find some particular piece

of evidence affecting or bearing on a ruling of the auditor. *Armstrong* v. *Winter,* 122 *Ga.* 869; *First State Bank* v. *Avera,* 123 *Ga.* 598.

5. There was no error in overruling the demurrer to the petition as amended. It set out a good cause for equitable relief. One objection made was that the alleged tender was insufficient; and it was so. It was neither by the plaintiff itself, nor for a definite amount. But tender was not necessary as a condition precedent to the filing of this petition. It showed that the defendant, who was the plaintiff's secretary and treasurer and also a director, and who had been acting for it and was still purporting to do so, and occupied a fiduciary relation to it, purchased its property at sheriff's sale, and took a deed in his own name; that he encumbered it with a mortgage to the British & American Mortgage Company to secure a loan, the amount of which was used in paying the purchase-money at the sheriff's sale, and a mortgage to Weyman & Connors; that he had received rents, issues, and profits from the property; that he took possession of all of the plaintiff's property, and was a man of small means and unable to respond in damages; and that an accounting was necessary to ascertain what, if anything, it should pay him, and until such accounting it was impossible to determine definitely the status. Plaintiff offered to do equity, and to pay what should be found to be justly due, if anything. *Johnson* v. *Giles,* 69 *Ga.* 652; Deichman *v.* Deichman, 49 Mo. 107-110; Irvin *v.* Gregory, 13 Gray (Mass.), 215; *Kerr* v. *Hammond,* 97 *Ga.* 567, 570.

6. None of the other grounds of the demurrer were well taken. The stockholders of the plaintiff were not necessary parties to the proceeding between the plaintiff and the defendant; nor were Weyman & Connors or the loan company necessary parties to determine the rights of the plaintiff as against the defendant. Weyman & Connors may have been proper parties, but they were not necessary parties in this proceeding, so that their omission would furnish a ground of demurrer by the defendant. The loan company moreover appears to have been a non-resident of the State.

7. If the auditor failed to report with sufficient fullness on any issue, a motion for a re-reference, not an exception to his report, was the proper remedy. *Jones* v. *Nolan,* 120 *Ga.* 588; *Weldon* v. *Hudson,* Id. 699; *Collinsville Granite Co.* v. *Phillips,* 123 *Ga.* 830.

8. There was no error in refusing to dismiss the case, in the

nature of a nonsuit. The auditor's report stated that "it was also admitted on the trial that the defendant was a director of the plaintiff corporation, and its secretary and treasurer, in the years 1898 and 1899, and prior to that time, and that he was a member of a committee in 1898 and 1899 to procure a loan upon said hotel property, the purpose of which was to pay off the loan thereon known as the Dederick loan, and that he acted in the three capacities." The evidence shows that he went to New York to aid in obtaining a loan for the plaintiff shortly before the sheriff's sale of this property; that he in fact obtained a loan in his own name, purchased the property at the sheriff's sale, took the deed in his own name, and went into possession. He contended that he and the vice-president of the company and the loan broker found it impossible to procure the loan in the name of the company, that the plan to make the loan and take the title in his own name and secure the loan by a mortgage on the property was necessary in an emergency, and that all he did was in the utmost good faith and for the benefit of the stockholders, and not for his individual benefit. His answer to the petition admits that on his return from New York to Americus, after determining upon his plan of operations and making an agreement to obtain the loan in his own name, he made no statements to the president of the company or to its stockholders as to what he had done, lest others who might be antagonistic to this plan should raise the bidding on the property to a sum beyond his reach. He agreed upon the arrangement in New York some two weeks before the sale, and returned to Americus, but made no disclosure of what he had done to his principal or its stockholders. After he bought the property and took the deed to himself, he proposed a scheme of reorganization. The circular letter which he issued to the stockholders began with the statement, "You are doubtless aware that I purchased the Windsor hotel at sheriff's sale on Tuesday September 5, 1899, but in doing so I had in mind a plan of reorganization," etc. He then outlined the intended formation of the new company, and offered to allow stockholders of the original company to become stockholders in the contemplated new one, but required a payment of fifteen dollars per share to be made, and that acceptance should be signified within ten days or he would find it necessary to realize on the remainder of the new stock "from outside parties." In his answer he says he has cared for the prop-

erty as if he were the bona fide owner, "as in fact he is." Without going further, we think this will suffice to indicate that the principal showed good ground for equitable action against its agent, director, and secretary and treasurer, who thus acted. The dismissal of the case would have been erroneous.

9. A number of letters were admitted in evidence, and one exception includes the whole. Some of them at least (for instance letters between the defendant and Weyman & Connors) were admissible; and this being so, the exception to all the letters in bulk must fail.

10. If an agent or person occupying a position of trust or a fiduciary relation towards the plaintiff bought in its property at sheriff's sale, and took title in his own name, and occupied and used it or received rents from it, and the owner was entitled to recover from him in equity, upon an accounting for rents, issues, and profits his liability was not necessarily limited to the amount of rent actually collected by him while in possession, but might include what he should have received on that account, or, in other words, the fair rental value of the property. Proof of the amount actually received would be for consideration along with the evidence bearing on the subject of good faith and diligence in determining the sum for which he was liable; but the actual receipts do not conclusively limit his liability. In the present case there was evidence as to what the property in controversy had brought for rent before the sale, what the defendant represented was its rent producing capacity when he was seeking to obtain a loan upon the faith of it, what rents he had actually collected, and whether this was all that could have been collected. Evidence was also introduced to show the rental value of the property; that the defendant, sometime after making the purchase, had occupied it himself and conducted a hotel there; and that when he rented it to others, he had the use of a room and received his own board, and at a later date had rooms for the use of himself and wife and received their board. The auditor found that he was liable for the rental value of the property, and under the evidence we can not say that the auditor erred. In 3 Thompson on Corporations, after referring to certain breaches of duty on the part of officers and directors of corporations, among them being dealing with themselves in regard to the corporate property, the author says (§4051): "In respect of the meas-

ure of damages or liability on the part of corporate directors and officers for such breaches of trust as those considered in this chapter, the general rule is that equity aims at compensation to those who are beneficially interested in the trust fund, the corporation, the stockholders, or the creditors; and the court will mould its decree so as to reach this result according to the varying circumstances of each case." In *Rogers* v. *Dickey*, 117 *Ga.* 819, 822, referring to the strict accountability to which trustees are held, Mr. Justice Lamar said: "If, as a result of following the law, the profits are small, he can not be held liable for what he might otherwise have made; but if for the purpose of increasing the profits he departs from the law, he can expect no protection from it when loss and disaster follow." In *Dowling* v. *Feely,* 72 *Ga.* 557, it was said: "A trustee can make no profit for himself out of the trust estate. If he risk the trust funds and lose, he is compelled to account for their full value; if he is successful, he is required to pay what he gains to the beneficiary of the fund embarked in the enterprise. This rule applies not only to trustees eo nomine, but to all persons sustaining confidential relations to others, such as executors and administrators, guardians, agents, officers, partners, etc." This refers to the corpus of the estate. But the principle would seem to apply to its rental value, if it be found that the amount actually collected by the defendant was less than the property should reasonably have produced. See also *Pettyjohn* v. *Liebscher,* 92 *Ga.* 149; *Bell* v. *Bell,* 20 *Ga.* 250; *Simmons* v. *Camp,* 71 *Ga.* 54(5); 28 Am. & Eng. Enc. Law (2d ed.), 1062. See notes to Selleck *v.* French, 6 Am. Dec. 196-7.

11. The defendant contended that there was no fiduciary or confidential relation between it and the plaintiff, which would affect his right to purchase at the sale. But unquestionably one who was found by the auditor to be an officer and director of the company and an agent to procure a loan for it to save its property from a sheriff's sale occupied a fiduciary and confidential relation toward it. Civil Code, §4030; 13 Am. & Eng. Enc. Law (2d ed.), 10; *Atlanta Real Estate Co*. v. *Atlanta National Bank,* 75 *Ga.* 40; 1 Pom. Eq. Jur. §157. As such he could not acquire interests in the property adverse to the person for whom he was acting. Civil Code, §4031; 1 Am. & Eng. Enc. Law (2d ed.), 1085; *Sessions* v. *Payne,* 113 *Ga.* 955; *Larey* v. *Baker,* 86 *Ga.* 468; 6 Thomp. Corp. §7866; *Kreitzer* v. *Crovatt,* 94 *Ga.* 694; Vallette *v.* Tedens, 122

Ill. 607, 3 Am. St. R. 502; Wardell *v.* R. Co., 103 U. S. R. 651; Newcomb *v.* Brooks, 16 W. Va. 32; Bispham's Principles of Equity (6th ed.), 144-145. A purchase by a trustee at his own sale is voidable at the option of the person for whom he was acting in a fiduciary capacity, whether he acted bona fide or not, or whether actual gain resulted to him or not, if such election be exercised within a reasonable time. *Shine* v. *Redwine,* 30 *Ga.* 780; *Lowery* v. *Idleson,* 117 *Ga.* 778(2) ; Tobin Canning Co. *v.* Frazer, 81 Texas, 407, 17 S. W. R. 25; 1 Story's Eq. Jur. (13th ed.), § 322; *Word* v. *Davis,* 107 *Ga.* 780. Under the facts disclosed by the evidence in this case, an implied trust arose in favor of the plaintiff, and it had a right to equitable relief against the defendant. Civil Code, §§ 3159, 3196. See also authorities cited above. Nor does it appear that there was such laches on the part of the plaintiff as prevented it from enforcing its rights in equity. *Word* v. *Davis,* 107 *Ga.* 780, and cit.; Darling *v.* Potts, 118 Mo. 506(5).

12. The defendant contended that he was entitled to credit for $5,000, on account of the charge of Weyman & Connors for services. This charge included not only their services in procuring the loan but also services to be rendered by them in the effort to effect a reorganization under the arrangement with the defendant. He contended that the plaintiff was liable for the whole of this sum and should credit him accordingly in the accounting, because he insisted that he contracted for it in good faith. As between the plaintiff and defendant, we do not think that the company should be charged with that part of the expenses which applied to an effort to reorganize it without its knowledge or consent. To allow the defendant in an accounting a reasonable amount on account of expenses in procuring the loan was as much as he could ask in equity, there being no agreement as to compensation for procuring the loan separate from the reorganization plan.

13. The bringing of this action did not operate to ratify the conduct of the defendant in regard to an effort to reorganize the company without its consent. In so far as the sheriff's sale is concerned, however, the plaintiff does not seek to set it aside. Neither the plaintiffs in the mortgage fi. fa. nor the sheriff are made parties, nor is there any prayer to annul the sale or to reinstate the status as it existed prior thereto. The plaintiff seeks to obtain possession of the property, not by setting aside the sheriff's sale, but by taking

the results of such sale and charging the title obtained by the defendant under that sale with an implied trust in its favor.   Indeed, as will appear later, the plaintiff in its pleadings conceded the necessity of assuming the loan of $35,000, under which the title was procured by the defendant and the mortgage fi. fa. was in part satisfied.

14. The auditor was appointed at the November term, 1900, of the court.   He struck a balance as of March 1, 1901.   His report (apparently for reasons satisfactory to all parties, as no point was made on the delay) was not filed until November 21, 1903.   Exceptions were filed, and were heard in October 1904, and a decree rendered on November 8, 1904.   The presiding judge, after correcting certain items in the report of the auditor, rendered a decree in which was included a judgment against the defendant for rents and profits from March 1, 1901, to the date of the decree, at the rate of $500 per month.   He deducted from this the balance found to be due the defendant on March 1, 1901, and added interest to the balance thus found in favor of the plaintiff.   We are of the opinion that the court should not have found both rents and profits extending from the time when the auditor struck the balance of accounts to the date of the decree, and also interest on the amount of them or the balance arising from them.   Mesne profit or rental value does not ordinarily bear interest, at least not until it becomes a liquidated sum.

15. The presiding judge also erred in arriving at the amount included in his decree.   The auditor reported how the balance stood on March 1, 1901, and that "the amount due by the defendant since March 1, 1901, should be credited with all sums paid out by the defendant for interest on the $35,000.00 at seven per cent. per annum, for taxes, insurance, and caring for the property, said credits to be ascertained by the court on the trial of the case."   The presiding judge in fact allowed no credits to the defendant on account of the items suggested by the auditor, but, in entering up the decree, continued the charge for the rents and profits, at the rate found by the auditor, from the time when the balance was struck to the date of the decree.   Exception was taken to this; and it was contended that the presiding judge, having overruled the exceptions with a slight correction of the report, should have confirmed the report and entered a decree upon it without increasing the charge against the defendant by the addition of rents and profits as just

stated; that if he could assume the continuance of the amount of the rents and profits found by the auditor, he should also have assumed that the fixed charges which the auditor had found the defendant was paying continued; or that, if he desired to carry out the auditor's recommendation of striking a new balance at the time of the trial, he should have proceeded in some appropriate manner to have ascertained such balance. The presiding judge added to the bill of exceptions the following note on this subject: "Upon the overruling of the defendant's exceptions, November 18, 1904, his counsel was immediately notified, and on November 3, he was notified that the entering of a final decree would come up at a chambers court to be held on Saturday November 5, and for him to be present and that he would be heard on such questions as he desired to make. He nor his client appeared at such time. Plaintiff's counsel appeared and presented the court with a decree to be signed, but same was held by the court until November 8 before signing it. During the argument of exceptions nor at any other time was it ever made known or intimated to the court by defendant or his counsel that he had incurred any expenses in the way of interest, taxes, insurance, or caring for the property, or that he had any claim or demand of any character he desired set off against or credited upon the rents due plaintiff. The auditor found and fixed the rental value of the property to be recovered by plaintiff after March 1, 1901, and there was no exception to this finding of the auditor."

Perhaps the auditor may have intended to find a continuing charge against the defendant at a given rate up to the time of the decree. His actual finding on this subject was in the following language: "The auditor finds that defendant is liable to the plaintiff for the rent of said property from September 5th, 1899, to March 1, 1901, at the rate of $500.00 per month, and that the amount due plaintiff by defendant March 1, 1901, was $9,000.00, and that he is liable to plaintiff for the rent of said property since said date at the same rate, to wit, $500.00 per month." As already stated, this report was filed November 21, 1903. The auditor left the court to ascertain something in addition to his report. The finding of additional facts or amounts and increasing or diminishing the amounts found by the auditor is not strictly a part of the proceeding of passing on the auditor's report and entering a decree upon it. Something more was contemplated, we think, something

in the nature of a supplemental accounting to bring the balancing of accounts down to the date of the decree. The desire to bring the accounting for rents and profits down to the date of the final decree was not an improper one. After an auditor's report is filed, the defendant has twenty days to except, remaining in possession. Then most likely follows some delay—in this case a year—the defendant still remaining in possession and enjoyment. And thus he can always have some time for enjoyment between the date of the report and that of the decree. If the plaintiff is entitled to recover, it is not compelled to lose this rental. It is not contemplated by the law that one entitled to a final decree on an accounting must, by reason of the unavoidable delay incident to legal procedure, get less than he is entitled to. In some cases, no doubt, an auditor's report might cover this interval, if it has fixed data to work upon. But in the present case there is an element of uncertainty. The auditor evidently contemplated the ascertainment of additional facts and the striking of a further balance at the trial. Doubtless it would have been better for counsel to have appeared and made claim for further expenditures, if he so desired; but the mere notice of an intention to enter a final decree did not put him on due notice that the additional facts would be found by the presiding judge, or call on him with sufficient distinctness to present any claim for the making of a new balance. Under the special facts of this case, we think the proper disposition is to return it to the superior court, with direction to allow a reasonable time, for an issue to be made as to this particular point, giving notice by rule, order, or other appropriate method to the respective sides, and to have the balance between the parties brought down to date, either by a rereference of that issue, or a direct trial. It is not necessary that the entire case should be reopened, but only that the accounting should be extended from the time when the auditor struck a balance to the time of the trial.

16. While Weyman & Connors are not necessary parties to the original action seeking equitable relief against the defendant, so that their non-joinder would furnish a ground for demurrer, still when the plaintiff sought to make them parties defendant, alleging them to be residents of Georgia, charging collusion between them and the defendant and seeking relief against them along with him in respect to the claim of commissions chargeable against the plaintiff,

and praying that the mortgage on the property given to them by the defendant for the amount of $5,000 advanced by them and also covering their claim for commissions should be cancelled, there seems to be no sound reason why it should not be allowed, and we think the court erred in rejecting it. Of course we decide nothing as to the merits of the case, either upon the pleadings or the evidence, in regard to them, except that the plaintiff should be allowed to make them parties, if it so desires.

17. The defendant has no cause for complaint that the equities between him and the plaintiff are dealt with in the absence of the loan company. In determining whether between the parties the defendant should be allowed credit for certain payments made, the person to whom the payments were made is not a necessary party. Moreover the loan company seems to be a non-resident, and is not shown to have any resident agent.

18. In decreeing that possession of the property should be taken from the defendant and delivered to the plaintiff, there was no error in providing that the plaintiff should indemnify the defendant against the mortgage of the loan company and should assume said loan. The money of the company was used to pay off the purchase-money at the sheriff's sale. It would be inequitable to allow the plaintiff to ask a court of equity to let it take the property free from the loan, and leave the defendant charged with the debt. Invoking the aid of a court of conscience, the plaintiff can not take the benefit of the loan, treat the sheriff's sale as passing title and discharging the execution under which it took place, recover its property, leave the defendant as the debtor, and neither pay off the mortgage nor indemnify him against it. The defendant contends that the plaintiff ought to pay off the mortgage debt before recovering the property. But apparently it was not due.

.The plaintiff claims that it should have an opportunity to plead any set-off or counter-claim which it may have against the foreclosure of the mortgage, and not have its rights relatively to the mortgagee fixed in the absence of the latter. This complaint, however, is in direct conflict with the plaintiff's own allegations and prayers. In the petition it was said, "Your petitioner is ready to do equity, . . and offers to take said property charged with the debt which he has placed thereon." The plaintiff prayed, "that said defendant be decreed to execute to your petitioner good and suffi-

cient title to said property subject to the aforesaid loan heretofore placed thereon by him." Again, in an amendment, the plaintiff alleged, "that petitioner stands ready to assume these obligations by or for indemnifying the said Fricker against any loss on account thereof. Petitioner has always expressed its willingness and desire to fully protect the said Fricker, and is still willing to do so as may be finally decreed in the premises."

19. In an equitable case it is the province of the judge to determine upon whom costs shall fall, and this determination will not be reversed unless the discretion of the presiding judge is abused. Civil Code, §4850.

None of the other exceptions which were in proper shape to be considered present any ground for reversal.

20. Under the authority conferred upon us by law (Civil Code, §5586) we reverse the judgment on the points indicated in this opinion, and return the case to the superior court, with direction that the presiding judge, by order or other appropriate method, give the parties an opportunity to form an issue for the purpose of bringing down the account from March 1, 1901, to the date of the trial, and that by rereference or trial in court the final balance be determined. We also direct that the plaintiff be allowed to make Weyman & Connors parties, if it so desires, so that a determination of the issues made in the pleadings with regard to them and their claims may be had.

*Judgment on each bill of exceptions reversed in part and affirmed in part. Let the defendant in error in each case pay the costs therein. All the Justices concur, except Beck, J., not presiding.*